[No. C044993. Third Dist. Nov. 9, 2004.]

MODESTO CITY SCHOOLS, Plaintiff and Appellant, v.
EDUCATION AUDITS APPEAL PANEL, Defendant and Respondent;
STEVE WESTLY, as Controller, etc., Real Parties in Interest and
Respondents.

1368

## Counsel

Banks & Watson, James J. Banks and Steven S. Kimball for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Louis R. Mauro and James M. Humes, Assistant Attorneys General, Kenneth R. Williams, Jack C. Woodside, Frank S. Furtek and Julie Weng-Gutierrez, Deputy Attorneys General, for Defendant and Respondent and for Real Parties in Interest and Respondents.

## Opinion

**RAYE, Acting P. J.—** ■ In order to accommodate emergencies, vacations, and illness, school districts offer short-term independent study programs. Unlike long-term independent study programs, short-term independent study allows the student to remain enrolled in classes while being absent for brief periods, generally from five to 20 school days. During their absence, students are responsible for completing assignments.

■ Under Education Code section 51747, school districts must adopt written policies containing guidelines for independent study in order to be eligible for state funding for pupils engaged in independent study.[1] Subdivision (c) of section 51747 specifies eight items to be included in independent study agreements.

Modesto City Schools (Modesto) appeals from an order denying its petition for writ of administrative mandamus to overturn an administrative decision interpreting section 51747 as requiring school districts to strictly adhere to subdivision (c) in written policies for both short-term and long-term independent study programs. Modesto's short-term independent study written agreements failed to include all the requirements set forth in subdivision (c). As a result, real parties in interest Office of the State Controller (SCO) and Department of Finance (collectively, real parties) determined Modesto must forfeit over $400,000 in independent study funding.

---

[1] All further statutory references are to the Education Code unless otherwise indicated.

On appeal, Modesto contends: (1) the plain language of section 51747 does not require districts to adopt all the items listed in subdivision (c); (2) under the doctrine of administrative collateral estoppel, an earlier finding of an Education Audits Appeal Panel (Appeal Panel) precludes relitigation of the issue; and (3) the finding that Modesto's short-term independent study agreements were deficient was based on an invalid "underground" regulation. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Statute*

This appeal revolves around section 51747, which provides in pertinent part:

"A school district or county office of education shall not be eligible to receive apportionments for independent study by pupils, regardless of age, *unless it has adopted written policies*, pursuant to rules and regulations adopted by the Superintendent of Public Instruction, that include, but are not limited to, all of the following:

"(a) The maximum length of time, by grade level and type of program, that may elapse between the time an independent study assignment is made and the date by which the pupil must complete assigned work.

"(b) The number of missed assignments that will be allowed before an evaluation is conducted to determine whether it is in the best interests of the pupil to remain in independent study . . . .

"(c) A requirement that a current written agreement for each independent study pupil shall be maintained on file including, but not limited to, all of the following:

"(1) The manner, time, frequency, and place for submitting a pupil's assignments and for reporting his or her progress.

"(2) The objectives and methods of study for the pupil's work, and the methods utilized to evaluate that work.

"(3) The specific resources, including materials and personnel, that will be made available to the pupil.

"(4) . . . the number of missed assignments allowed prior to an evaluation of whether or not the pupil should be allowed to continue in independent study.

"(5) The duration of the independent study agreement, including the beginning and ending dates for the pupil's participation in independent study under the agreement. No independent study agreement shall be valid for any period longer than one semester, or one-half year for a school on a year-round calendar.

"(6) A statement of the number of course credits or, for the elementary grades, other measures of academic accomplishment appropriate to the agreement, to be earned by the pupil upon completion.

"(7) The inclusion of a statement in each independent study agreement that independent study is an *optional* educational alternative in which no pupil may be required to participate. . . . [T]he agreement also shall include the statement that instruction may be provided to the pupil through independent study *only if the pupil is offered the alternative of classroom instruction.*

"(8) Each written agreement shall be signed . . . ." (Italics added.)

*Modesto Independent Study*

Modesto adopted a board policy authorizing an independent study program as an optional alternative for students to reach curriculum objectives and fulfill graduation requirements. At Modesto, some independent study is short term, lasting as little as five days or as many as 20 days. Long-term independent study may last as long as a semester.

Unlike those in long-term independent study programs, short-term independent study students continue to be enrolled in their regular classes and never leave the regular school program. Students receive an assignment sheet for each subject from the teacher, specifying assignments to be completed during the independent study period. Students return to class at the end of the independent study. Parents voluntarily request short-term independent study for their children, often because of vacation plans.

Long-term independent study generally lasts an entire semester. Students enrolled in college or vocational courses, students who work, and students who prefer to work at their own pace participate in long-term independent study. Long-term students are "dis-enrolled" from regular classes.

*The 1999 Audit Report*

In November 1999 an independent auditing firm completed an audit of Modesto for the 1998 through 1999 fiscal year (1999 audit report). The 1999 audit report found Modesto's long-term independent study agreements fully

complied with section 51747. However, Modesto's short-term independent study agreements lacked five of the elements required under section 51747, subdivision (c).

Modesto appealed the short-term finding to the Appeal Panel. In a proposed decision, the administrative law judge (ALJ) dismissed the appeal, finding a lack of jurisdiction to adjudicate issues of law. The Appeal Panel declined to adopt the proposed decision and remanded for further evidence.

The Appeal Panel ultimately adopted a proposed decision granting Modesto's appeal, finding: "The list of items in [section 51747] is consistent with the list of items adopted by the Modesto City Schools board in its policy. The plain meaning of the language is that a school district must adopt written policies that include certain requirements for the independent study contracts. The Modesto City Schools complied with this requirement of the Education Code and is eligible to receive apportionments for the short-term independent study students who were the subjects of this matter."

Modesto requested that the 1999 final decision be designated a precedential decision. The Appeal Panel denied the request.

*The 2000 Audit Report*

In 2000 the independent auditing firm conducted a subsequent audit of Modesto (2000 audit report). The 2000 audit report found the same deficiencies as the 1999 audit report. The SCO certified the 2000 audit report.

The 2000 audit report concluded that five requirements of section 51747, subdivision (c) were missing from Modesto's short-term independent study agreements. The agreements lacked the following elements: (1) the number of missed assignments allowed before evaluation; (2) the objectives and methods of study for the pupil's work; (3) a statement of the number of course credits, or other measures of academic accomplishment, to be earned by the pupil upon completion; (4) the inclusion of a statement in each agreement that independent study is an optional educational alternative; and (5) a statement that instruction may be provided through independent study only if the pupil is offered the alternative of classroom instruction.

The auditor recommended that Modesto's ADA (average daily attendance) computation for funding be eliminated for short-term independent study.[2]

Modesto again appealed the finding as to the short-term independent study agreements. Modesto also filed a motion for summary disposition, arguing the final decision on the 1999 audit report was binding upon the 2000 audit appeal. Following a hearing, the ALJ denied the motion.

The ALJ concluded the public interest exception to the rule of collateral estoppel applied and allowed the issue of compliance with section 51747 to be relitigated. The ALJ found, "The funding and regulation of independent study programs is an important public interest which impacts hundreds of schools, thousand of students and parents, and the public treasury." The ALJ also noted: "Were collateral estoppel to apply, the State of California would be bound to the statutory interpretation of the Administrative Law Judge, in all audits of all of the State's School Districts which provide long-term or short-term independent study programs."

The parties stipulated to the entry of the transcript of the hearing on the 1999 audit appeal. The Appeal Panel adopted the ALJ's proposed decision in the 2000 audit appeal as its final decision. The ALJ found: "The legislature intended to pay ADA apportionment for independent study programs only when the programs complied with quality control measures. [¶] One of those quality control measures was the creation of a specific contract between the teacher and the parent/student, setting forth the elements specified in section 51747[, subdivision] (c). The intent of the independent study contract included providing written notice to students and parents of options to independent study, and notice of board policies regarding conditions of independent study. The intent of the independent study contract was also to memorialize and bind the students and teachers to an agreement on the obligations of the student and the teacher during the independent study period."

The ALJ also concluded: "In light of the legislative intent of section 51747 . . . it is clear that the legislature sought to enact a comprehensive program for ensuring fiscal and academic accountability of independent study programs. There is no fiscal or academic accountability in a program where a

---

[2] School districts receive funding based upon student attendance. Each student's attendance is counted toward a district's ADA. (§ 46300.) ADA is used to calculate the amount of public funds that is apportioned to each school district. Section 46300, subdivision (e)(1) states that in "computing the average daily attendance of a school district, there shall also be included the attendance of pupils participating in independent study . . . for five or more consecutive schooldays." Each independent study student shall not be credited for more than one day of attendance per calendar day. (§ 46300, subd. (e)(2).) The statute makes no distinction between short-term and long-term independent study.

school board enacts a policy but is not required to impose the policy upon its independent study programs."

Modesto filed a petition for writ of administrative mandamus. Following a hearing, the trial court denied the writ. The trial court found the word "adopt," as used in section 51747, does not necessarily have a plain meaning and therefore consideration of the statute's legislative history is appropriate. The trial court's review of the legislative history indicated the Legislature intended that the elements specified in subdivision (c) of section 51747 be included in the actual written agreements for each pupil and not merely in a written policy voted on by Modesto's board. The trial court also found collateral estoppel did not apply for two reasons: the issue is one of law, and the public interest exception applies. Finally, the trial court found the audit guide used by the auditor in evaluating Modesto's compliance with section 51747 did not amount to an underground regulation.

Following entry of judgment, Modesto filed a timely notice of appeal.

## DISCUSSION

■ On appeal following a trial court's decision on a petition for writ of mandate, we need only review the record to determine whether the trial court's findings are supported by substantial evidence. However, we review questions of law independently. Thus, where the facts are undisputed and the issue involves statutory interpretation, we exercise our independent judgment and review the matter de novo. (*Alliance for a Better Downtown Millbrae v. Wade* (2003) 108 Cal.App.4th 123, 129 [133 Cal.Rptr.2d 249].)

The present appeal raises three issues of law on which we exercise our independent judgment: 1) the meaning of "adopted written policies" as used in section 51747, which denies apportionments to school districts for independent studies unless the districts have adopted written policies including certain prescribed requirements; 2) whether the doctrine of administrative collateral estoppel compels adherence to the Appeal Panel's decision upholding the 1999 audit report finding and thereby precludes relitigation of Modesto's compliance with section 51747; and 3) whether the audit guide used in performing the challenged 2000 audit constitutes an underground regulation.

*The Meaning of Section 51747*

As is often the case in matters of statutory construction, both parties assert the disputed phrase (here, "adopted written policies") is clear and unambiguous and its meaning is "plain," though they disagree over what the phrase

means. It is not uncommon in such a contest for parties to support their varied interpretations with reference to disparate dictionary definitions of critical terms. Black's Law Dictionary may be set against Webster's in its various incantations, or various dictionary definitions of the same word may be put in play. What is unusual about the present controversy is that while the parties cite different editions of the same dictionary (Merriam-Webster's Collegiate Dictionary), they agree on the same definition, viz.: "adopt" means "to take up and practice or use" or "to accept formally and put into effect."

Real parties argue this means the independent study agreements must contain language implementing the content-specific requirements of the adopted policy. Modesto contends "adopt," when used in conjunction with "policy" (the general principles by which a government is guided in its management of public affairs), requires only the formal acceptance of written principles for an independent study program. Therefore, section 51747 requires a district to adopt formal policies enumerating the specific items listed in subdivision (c); it does not require the inclusion of those items in each independent study contract.

 We read the language of a statute in context and in light of the nature and purpose of the statutory scheme. (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1000 [90 Cal.Rptr.2d 236, 987 P.2d 705].) While Modesto correctly advises that our obligation is to apply the plain meaning of the words used, the meaning it assigns to the critical words here at issue is neither plain nor plausible in light of the context in which the words appear. Modesto's reading, which limits its obligation under section 51747 to the formal acceptance of written principles, ignores portions of the Webster's definition and effectively eviscerates the legislative mandate.

 Section 51747 does not merely refer to general policies of student accountability; it prescribes the content and form of such policies. Thus it compels written policies that include "[a] requirement that a current written agreement for each independent study pupil shall be maintained on file . . . ." (§ 51747, subd. (c).) Moreover, the content of the written agreement is set forth in detail and includes the items omitted from Modesto's short-term independent study agreements. It cannot plausibly be argued that Modesto has "put into effect" the policy required by section 51747 when all that it does is express approval in principle without implementing the requirements set forth in the statute.

Modesto's proposed construction of section 51747 is completely at odds with legislative history. The 1989 Summary Digest explains that the amendments to section 51747 would "prohibit school districts . . . from receiving apportionments for independent study unless: (1) written policies are adopted

regarding the maximum length of time, by grade level and type of program, that may elapse between the independent study assignment and completion, and the number of missed assignments permitted before a formal evaluation is required, (2) *a current written agreement containing specified information* which is signed by the pupil . . . , and (3) pupils in independent study are identified in records by grade level, placement, and the school in which they are enrolled." (Legis. Counsel's Dig., Sen. Bill No. 1563 (1989–1990 Reg. Sess.) 2 Stats. 1989, Summary Dig., p. 405, italics added.)

The Senate Committee on Education also provided a staff analysis of the proposed bill. The analysis states, in part: "This bill would require LEA's [local educational agencies] that offer ISP [independent study program] to do the following: [¶] 1) Adopt rules and regulations regarding: [¶] a) The maximum length of time that a student has to complete his/her instructional assignments. [¶] b) The number of missed assignments that will automatically trigger a formal evaluation to determine if ISP is an appropriate placement. [¶] 2) *Include in each pupil's written agreement:* [¶] [the elements listed in section 51747, subdivision (c)] [¶] 3) Specify that an LEA will not receive apportionment for pupils in ISP unless it does each of the following: [¶] a) Maintains a written agreement, as specified, for each pupil." (Sen. Com. on Education, Analysis of Sen. Bill No. 1563 (1989–1990 Reg. Sess.) as amended May 4, 1989, italics added.)

In a letter to then Governor George Deukmejian, Senator Gary Hart explained the legislative intent behind section 51747: "[T]he lack of specification in current law governing independent study has allowed programs to vary widely in structure and quality. SB 1563 would enact 'quality control' standards for independent study that establish student:teacher ratios, require districts to adopt local policies to ensure proper monitoring of the program, *expand the written agreements* that specify the instructional plan for each independent study pupil and require the State Department of Education to begin compiling data to determine the level of achievement of students who receive instruction through independent study." (Sen. Hart, sponsor of Sen. Bill No. 1563 (1989–1990 Reg. Sess.), letter to Governor, Sept. 15, 1989, italics added.)[3]

---

[3] Modesto claims the Hart letter gives rise to conflicting inferences, and therefore the legislative history provides no basis for deviating from the "plain meaning" of the statute. We note the "plain meaning" of section 51747 has led the parties in the present case to radically different results. In addition, we find no ambiguity in Hart's letter. Hart notes school districts are required to adopt local policies and to expand the written agreements. In addition, the State Department of Education is charged with compiling data on independent study programs.

■ These documents reveal an unequivocal legislative intent to require districts to include the specific elements enumerated in section 51747, subdivision (c) in *each and every* written agreement. Nothing in these documents supports Modesto's gloss on section 51747 as requiring only that districts adopt written policies including these specific elements.

■ As real parties point out, Modesto's interpretation would thwart a fundamental purpose behind the statute: to ensure that independent study agreements contain specific elements and to prevent students participating in such programs from falling behind their peers. The Legislature intended not just to compel a general school board policy, but also to enact "quality control" standards. To establish these goals, section 51747, subdivision (c) requires each written independent study agreement, whether short term or long term, contain the specific elements enumerated within. Since each independent study agreement contains these elements, all parties—students, teachers, and parents—are aware of the requirements under the statute.[4]

Modesto also analogizes the adoption of written policies in the present case with the adoption of police pursuit policies under Vehicle Code section 17004.7. Modesto argues the analogy supports its interpretation of Education Code section 51747. We find the analogy inapposite.

Vehicle Code section 17004.7 provides that a public agency employing peace officers that "adopts a written policy on vehicular pursuits complying with subdivision (c) is immune from liability for civil damages . . . ." The statute also provides that if the entity has adopted a policy for safe conduct of vehicular pursuits by peace officers, "it shall meet all of the following minimum standards[.]" The statute specifies four items to be included in the policy. (Veh. Code, § 17004.7, subd. (c).)

Courts have construed Vehicle Code section 17004.7 to require only that an agency adopt a pursuit policy that meets the statute's requirements. If it does so, immunity results. " 'The extent to which the policy was implemented in general and was followed in the particular pursuit is irrelevant. . . .' " (*Nguyen v. City of Westminster* (2002) 103 Cal.App.4th 1161, 1167 [127 Cal.Rptr.2d 388], quoting *Brumer v. City of Los Angeles* (1994) 24 Cal.App.4th 983, 987 [29 Cal.Rptr.2d 515].) "Nowhere does the statute require that the grant of immunity be predicated on proof that the pursuing

---

[4] We note the Legislature subsequently revised section 51747, effective September 29, 2004, to provide, in relevant part: "A school district or county office of education shall not be eligible to receive apportionments for independent study by pupils, regardless of age, *unless it has adopted written policies, and has implemented those policies*, pursuant to rules and regulations adopted by the Superintendent of Public Instruction, that include, but are not limited to, all of the following . . . ." (Stats. 2004, ch. 896, § 50; italics added.)

officer followed the standards and the guidelines, contained in the policy, during a given chase for which immunity is sought. Had the Legislature intended that the employer-entity prove in each instance that the employee-officer followed the guidelines in order to invoke the immunity, the statute would have said so." (*Kishida v. State of California* (1991) 229 Cal.App.3d 329, 337 [280 Cal.Rptr. 62] (*Kishida*).)

According to Modesto, "The similarity in the structure and effect of the statutory language in [Education Code] section 51747 and Vehicle Code section 17004.7 is manifest. Both statutes require public entities to adopt policies containing prescribed items. Failure to adopt such policies results in loss of a benefit . . . . Neither statute says anything about loss of such benefit if the items required in the policy are not put into practice in every instance. The plain language of the statutes indicates the Legislature's intent to impose only an obligation on the public entities to adopt a policy stating the requisite guidelines. If the Legislature had intended every item specified in the policy to be followed in order for the entities to receive the benefit mentioned in the statute, 'the statute would have said so.'" (Quoting *Kishida, supra,* 229 Cal.App.3d at p. 337.)

We find the purposes between the two statutes radically different, preventing a meaningful analogy. The purpose in adopting a police pursuit policy is to provide public employees immunity from tort liability. (Veh. Code, § 17004.7.) Such policies are designed to allow officers discretion in carrying out their duties. (Veh. Code, § 17004.7, subd. (a).) The statute leaves to the agency the determination of when to conduct vehicle pursuits without the threat of civil liability.

 In contrast, the Legislature enacted section 51747 to promote more accountability and fiscal responsibility in the administration of independent study programs. Although districts enjoy some discretion in formulating independent study programs, to receive public funds, they must conform to the specific requirements of section 51747, subdivision (c).

The two statutes promote different public purposes and differ radically in the amount of discretion granted to the agency governed by the statute. We find the Vehicle Code statute and the subsequent interpretations by courts irrelevant to our consideration of Education Code section 51747.

*Collateral Estoppel*

Modesto argues, under the doctrine of administrative collateral estoppel, the Appeal Panel's decision upholding the 1999 audit report finding precludes relitigation of Modesto's compliance with section 51747. Real parties con-

tend collateral estoppel does not apply because the prior ruling centered on a question of law and the public interest exception applies.

■ "Generally, collateral estoppel bars the party to a prior action, or one in privity with him, from relitigating issues finally decided against him in the earlier action." (*City of Sacramento v. State of California* (1990) 50 Cal.3d 51, 64 [266 Cal.Rptr. 139, 785 P.2d 522] (*City of Sacramento*).) The parties do not dispute that the elements of collateral estoppel are met in the present case: the same parties to the underlying action have already litigated whether section 51747 requires Modesto to include all the items listed in section 51747, subdivision (c) in short-term independent study agreements. In 1999 the Appeal Panel found section 51747 did not require Modesto to include all the elements listed in section 51747, subdivision (c) in each agreement.

■ However, courts recognize an exception to the rule of collateral estoppel where there is a prior ruling on a question of law and the issue concerns a matter of public interest. (*City of Sacramento, supra,* 50 Cal.3d at p. 64.) As we have noted: "The courts will not apply [collateral estoppel] to foreclose the relitigation of an issue of law covering a public agency's ongoing obligation to administer a statute enacted for the public benefit and affecting members of the public not before the court." (*California Optometric Assn. v. Lackner* (1976) 60 Cal.App.3d 500, 505 [131 Cal.Rptr. 744].)

■ "Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded [if] [¶] . . . [¶] . . . [t]here is a clear and convincing need for a new determination of the issue . . . because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action . . . ." (Rest.2d Judgments, § 28.)

■ The Supreme Court carefully delineated the public interest exception: "The public interest exception is an extremely narrow one; we emphasize that it is the exception, not the rule, and is only to be applied in exceptional circumstances." (*Arcadia Unified School Dist. v. State Dept. of Education* (1992) 2 Cal.4th 251, 259 [5 Cal.Rptr.2d 545, 825 P.2d 438] (*Arcadia*).) Notwithstanding this cautionary language, we find *Arcadia* instructive in analyzing the present case.

In *Arcadia,* the Supreme Court applied the public interest exception, refusing to allow an issue decided in a depublished appellate court decision to bar relitigation in a subsequent lawsuit between numerous school districts and

the State Department of Education. In the prior depublished opinion, the appellate court held section 39807.5, which allowed districts to charge fees for student transportation, violated the California Constitution. (*Arcadia, supra*, 2 Cal.4th at pp. 255–256.) However, numerous school districts continued to charge for student transportation, leading to further litigation. (*Id.* at p. 256.)

The Supreme Court applied the public interest exception and allowed the subsequent litigation. The court found the constitutionality of section 39807.5 would be an ongoing issue because the prior suit could not be cited as legal authority. (*Arcadia, supra*, 2 Cal.4th at p. 257.)

In addition, it was in the public interest for school districts to have a uniform understanding of such an important issue. If the prior case was incorrectly decided, school districts would be unable to collect transportation revenues, and students might be adversely affected. Districts unable to fund bus transportation might be forced to eliminate the service. The court concluded: "The public interest, especially the interests of school districts, taxpayers, and students, will best be served by a final resolution by this court of whether the fees are permissible." (*Arcadia, supra*, 2 Cal.4th at p. 258.)

Here, as in *Arcadia*, the issue to be relitigated involves public funding. An inaccurate interpretation of section 51747 might award funding to districts not in compliance with the statute's requirements. The potential impact of an erroneous interpretation extends beyond Modesto. All school districts can implement independent study programs. A correct reading of section 51747 is critical to prevent the misdirection of state funds. We agree with real parties that it is important districts throughout the state have a clear and accurate understanding of the requirements of independent study programs.

Modesto argues *Housing Authority v. Workers' Comp. Appeals Bd.* (1998) 60 Cal.App.4th 1076 [70 Cal.Rptr.2d 738] (*Housing Authority*) mirrors more closely the present case. In *Housing Authority*, the Workers' Compensation Appeals Board (WCAB) concluded the Housing Authority of the City of Los Angeles was collaterally estopped by an earlier WCAB opinion from relitigating whether the Housing Authority's police chief fell within Labor Code section 4850 and was eligible for increased disability benefits. (*Housing Authority, supra*, 60 Cal.App.4th at pp. 1079–1080.) The prior opinion found a Housing Authority police officer fit within the definition of section 4850. (*Housing Authority, supra*, 60 Cal.App.4th at p. 1084.)

The appellate court declined the public interest exception, finding: "Rather than involving the administration of a program affecting citizens throughout the state, this case involves a single local agency. Rather than affecting questions of great economic consequence, this case involves whether or not officers of one local agency are eligible for an increased disability benefit for the period of one year. To apply the public interest exception here would mean that anytime a public agency is subject to a judicial or quasi-judicial determination with an adverse economic consequence, that agency would not be bound by the doctrine of collateral estoppel. Such an approach would effectively eviscerate the rule that collateral estoppel applies to determinations of law." (*Housing Authority, supra,* 60 Cal.App.4th at p. 1086.)

*Housing Authority* focused on the narrow scope of the issue to be relitigated: disability benefits for employees of one state agency. Here, in contrast, the interpretation of section 51747 potentially affects all school districts seeking to administer independent study agreements and the students who seek to participate in those programs.[5]

■ Therefore, we find the interpretation of section 51747 presents an issue of public interest sufficient to trigger the public interest exception to the doctrine of collateral estoppel.

*Underground Regulation*

■ Finally, Modesto argues the audit guide utilized by the independent auditor in performing the 2000 audit constituted an underground regulation. An underground regulation is a regulation that a court may determine to be invalid because it was not adopted in substantial compliance with the procedures of the Administrative Procedure Act (Gov. Code, § 11340 et seq.) (APA). (*California Advocates for Nursing Home Reform v. Bontá* (2003) 106 Cal.App.4th 498, 506 [130 Cal.Rptr.2d 823].) To be deemed an underground regulation, that audit guide must meet two requirements: (1) the agency must intend it to apply generally rather than in a specific case; and (2) the agency must adopt it to implement, interpret, or make specific the law enforced by the agency. (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 571 [59 Cal.Rptr.2d 186, 927 P.2d 296] (*Tidewater*).)

Modesto argues the audit guide fits the definition of an underground regulation. According to Modesto, the audit guide is intended to apply generally, rather than in a specific case, since it was developed to apply generally to compliance audits.

---

[5] We note Modesto argues: "There is no specific evidence in the record that any other district has modified short-term independent study agreements in the manner that [Modesto] did, or has done so because [Modesto] prevailed in its 1999 audit appeal." However, the potential for other districts to implement modified agreements remains.

Real parties argue the audit guide is not applied generally because it leaves to the auditor's discretion which procedures to utilize in conducting an audit. We agree.

Section 14503, subdivision (a), in effect at the time, stated, in pertinent part: "For each state program compliance requirement included in the audit guide, every audit report shall further state that the *suggested* audit procedures included in the audit guide for that requirement were followed in the making of the audit, if that is the case, or, *if not, what other procedures were followed.*" (Italics added.)

 Section 14503 states the audit guide serves as a suggested resource but not the sole resource for performing compliance audits. The auditor possesses the discretion to follow alternative procedures.

Modesto argues the auditor who performed the 2000 audit, through his testimony, revealed he felt compelled to follow the audit guide in making his findings. This testimony establishes only how one auditor viewed the audit guide. The wording of section 14503 clearly establishes the audit guide as an optional resource, not the only acceptable method for performing audits. The audit guide is not a rule of general application, but a tool that an auditor may or may not utilize in performing an audit.

Nor do we find the audit guide is a restatement of existing law. The audit guide does not implement, interpret, or make specific the law enforced or administered by the agency. (*Tidewater, supra,* 14 Cal.4th at p. 571.) It proposes procedures to be employed in conducting an audit.

 The adoption of an interpretation consistent with the language and intention of a law and existing regulations as a prelude to enforcement does not require compliance with the APA. (*Aguilar v. Association for Retarded Citizens* (1991) 234 Cal.App.3d 21, 27 [285 Cal.Rptr. 515].) The audit guide adopts an interpretation of the independent study requirements consistent with section 51747.

## DISPOSITION

The judgment is affirmed. Real parties shall recover costs on appeal.

Hull, J., and Robie, J., concurred.