[No. C047824. Third Dist. Feb. 23, 2006.]

EXCELSIOR COLLEGE, Plaintiff and Appellant, v.
BOARD OF REGISTERED NURSING, Defendant and Respondent.

COUNSEL

Wilke, Fleury, Hoffelt, Gould & Birney, Daniel L. Baxter, Alan G. Perkins, Sarah L. Ream and Megan A. Lewis for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Alfredo Terrazas, Assistant Attorney General, Arthur D. Taggart, Janice K. Lachman and Jessica M. Amgwerd, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**NICHOLSON, J.**—Plaintiff Excelsior College, a New York-based distance learning nursing program, sought writs of mandate, as well as declaratory and injunctive relief, in response to decisions of the California Board of Registered Nursing (Board) altering the Board's interpretation and application of Business and Professions Code section 2736.[1] Previously, the Board recognized Excelsior's program as equivalent to the minimum requirements of accredited programs in California, thus enabling Excelsior graduates to apply for licensure in California. The Board, however, recently concluded it has no authority to evaluate out-of-state programs prospectively—that is, before a nursing program graduate applies for licensure. Excelsior seeks to invalidate the Board's interpretation of section 2736 and compel the Board to continue accepting the Excelsior program as equivalent to California's minimum requirements. The trial court sustained the Board's demurrer to Excelsior's petition for writs of mandate and causes of action for declaratory and injunctive relief.

---

[1] Unless otherwise indicated, all statutory references are to the Business and Professions Code.

On appeal, Excelsior alleges multiple errors in the trial court's ruling, but the arguments revolve around whether section 2736 requires the Board to continue evaluating out-of-state nursing programs, such as Excelsior's, prospectively, and whether the Board's actions violated any administrative duties it owed to Excelsior. We conclude the trial court did not err in dismissing Excelsior's complaint because section 2736 does not require the Board to make prospective evaluations of out-of-state programs such as Excelsior's and Excelsior has no right to an administrative hearing on the Board's interpretation and application of section 2736.

## STATUTORY AND REGULATORY FRAMEWORK

■ The Nursing Practice Act, section 2700 et seq., governs the licensing requirements and the practice of nursing in California. It also created the Board of Registered Nursing to oversee licensure of registered nurses in California. (§ 2701.) The primary purpose of the Board is to protect the public. "Protection of the public shall be the highest priority for the Board of Registered Nursing in exercising its licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount." (§ 2708.1.)

■ The Board is responsible for ensuring the quality of nursing in California. Specifically, the Board is responsible for licensing and disciplining nurses within this state. (§§ 2725–2742, 2750–2765.) The Board also has authority to accredit nursing schools located in California. (§§ 2785–2788.) Students who graduate from an accredited in-state program are eligible to apply for licensure. (§ 2785.)

■ Section 2736, subdivision (a)(2) provides that a nursing applicant seeking licensure in California must have either successfully completed required courses of instruction in an accredited in-state program or "successfully completed courses of instruction in a school of nursing outside of this state which, in the opinion of the board at the time the application is filed with the Board of Registered Nursing, are equivalent to the minimum requirements of the board for licensure established for an accredited program in this state."

Section 2786, subdivision (b) provides: "The board shall determine by regulation the required subjects of instruction to be completed in an approved school of nursing for licensure as a registered nurse and shall include the minimum units of theory and clinical experience necessary to achieve essential clinical competency at the entry level of the registered nurse. The board's standards shall be designed to encourage all schools to provide clinical instructions in all phases of the educational process."

California Code of Regulations, title 16, section 1426, identifies the coursework requirements for in-state programs. These requirements include an equal number of units in both theory and clinical practice. Graduates of California nursing programs are required to complete 18 semester or 27 quarter units of supervised clinical practice, concurrent with classes in theory, in five areas of nursing, including medical-surgical, maternal/child, mental health, psychiatric nursing and geriatrics. In clinical practice, students learn the vital hands-on skills that are at the heart of nursing practice. Nursing students receive supervised clinical practice with rotations to various settings (hospitals, clinics, etc.) with a variety of patients (adults, pediatrics, obstetrics, psychiatric, geriatric, etc.). Some of the skills that require supervised clinical practice are administering medications, including injections; assessing patient pain levels; and performing mental status exams, including assessing psychiatric and geriatric patients. Nursing students learn how to manage multiple patients at the same time, and they learn to distinguish various symptoms by working with numerous patients who have a wide range of health conditions. To fulfill the clinical practice unit requirements, California nursing students must complete a minimum of 810 hours of supervised clinical practice.

## BACKGROUND

Documents filed by Excelsior provide the following background information: Excelsior College (formerly known as Regents College) is a distance learning program, based in New York. Excelsior's programs, including its nursing programs, are designed to enable individuals to earn college degrees by using college courses, proficiency examinations, and special assessment. The programs are free of customary time constraints and permit students to satisfy requirements at their own pace.

In 1979, the Board began officially accepting Excelsior's nursing program as "equivalent to the minimum requirements of the Board for licensure established for an accredited program in this state," pursuant to section 2736, subdivision (a)(2). This acceptance continued for more than 20 years.

In August 2001, the Board received correspondence from the statewide organization of Public Health Nursing Directors expressing concern about the skill level of new graduates from some nursing schools. The Board's subsequent inquiry revealed that the nursing education provided by Excelsior College did not meet minimum education requirements for California registered nursing licensure because it lacked sufficient supervised clinical practice.

Excelsior's supervised clinical practice consisted of students taking and passing its "Clinical Performance Nursing Examination" (CPNE). The CPNE is a weekend course, administered over two and one-half days, with a limited number of patients involving only two areas of nursing. As opposed to California's 810 hours of supervised clinical practice in a variety of settings with various patients, Excelsior's students simply take the weekend CPNE. (Excelsior reports that 35 percent of students fail the CPNE.) This differed substantially from the minimum 810 hours of supervised clinical practice required under California Code of Regulations, title 16, section 1426. The CPNE, in the Board's opinion, is not equivalent to the minimum education requirements for clinical practice under California licensure law.

The Board notified Excelsior of its concerns and engaged in numerous discussions with Excelsior and its counsel. Between August 13, 2002, and October 2, 2003, the Board communicated with Excelsior and its counsel, either in writing, via telephone, or in person on at least six occasions to discuss ways for Excelsior to come into compliance with California's clinical supervision requirement. On January 10, 2003, the Board's education/licensing committee recommended removing recognition of Excelsior's program and, on February 7, 2003, the Board deferred action at Excelsior's request. At subsequent meetings, the committee continued to recommend cessation of the long-standing recognition of Excelsior's program as meeting California's requirements, but the Board continued to defer action at Excelsior's request. Meanwhile, Excelsior contacted members of the California Legislature, conveying concerns that the Board was unfairly evaluating Excelsior's nursing program. Excelsior's final opportunity to present a plan to comply with California's clinical practice requirement occurred on October 17, 2003.

On December 5, 2003, the Board approved a motion itemizing the requirements an Excelsior graduate must satisfy for the applicant's coursework to be considered equivalent to California minimum requirements. The Board later determined this decision was too narrow and did not fully resolve the issue. On February 6, 2004, the Board superseded the December 5, 2003, decision with the following:

"Excelsior College graduates, like other out-of-state graduates, must meet the requirements set forth in California Business and Professions Code Section 2736(a)(2) and California Code of Regulations Section 1426, including the requirement of supervised clinical practice concurrent with theory, in order to be eligible for examination and licensure as a California registered nurse. This eligibility requirement applies to students who enrolled at Excelsior on or after December 6, 2003."

## PROCEDURE

Excelsior sought four types of relief to correct the Board's alleged erroneous interpretation of section 2736 and to reinstate Excelsior's previous recognition. Excelsior sought a traditional writ of mandate, pursuant to Code of Civil Procedure section 1085, compelling the Board to set aside its February 6, 2004, decision and reinstate the Board's prior recognition of Excelsior's program as equivalent. Excelsior asked for the same relief through an administrative writ of mandate pursuant to Code of Civil Procedure section 1094.5. Excelsior sought injunctive relief to prevent the Board from implementing its February 6, 2004, decision. Finally, Excelsior asked the court to declare the following: (1) the Board's requirement that out-of-state graduates demonstrate exact compliance with the minimum California requirements constitutes an "underground regulation;" (2) Excelsior is entitled to continued recognition that its nursing programs are equivalent to the minimum requirements for approved in-state schools, absent a showing of a change of fact or law; (3) the Board's application of its "underground regulation" to Excelsior College violates an executive order (not discussed on appeal); and (4) the Board's interpretation of section 2736, subdivision (a)(2) violates the commerce clause of the United States Constitution.[2]

In its complaint, Excelsior alleged the Board, without offering any evidence of changes in either Excelsior's program or the in-state requirements, revoked its prior findings that Excelsior's nursing programs were equivalent to the requirements of in-state schools. Excelsior alleged the Board's assertion that it has no statutory authority to make prospective findings regarding the equivalency of out-of-state schools is contrary to law. It claimed the Board's adoption and implementation of this new interpretation of statutory authority denied Excelsior due process of law and caused direct injury to Excelsior and its students. Excelsior further claimed this statutory interpretation violates the commerce clause of the United States Constitution because it imposes a discriminatory and unreasonable burden on out-of-state nursing schools as compared to in-state schools.

---

[2] While declaratory relief may properly test the constitutionality of a statute or regulation, it is not an appropriate method for judicial review of administrative decisions. (*State of California v. Superior Court* (1974) 12 Cal.3d 237, 251 [115 Cal.Rptr. 497, 524 P.2d 1281]; *Floresta, Inc. v. City Council* (1961) 190 Cal.App.2d 599, 612 [12 Cal.Rptr. 182].) Therefore, the only proper prayer under Excelsior's request for declaratory relief is its constitutional challenge to the Board's interpretation of the statute.

Excelsior filed its petition for writs of traditional and administrative mandate and complaint for declaratory and injunctive relief on December 31, 2003. On demurrer, the Board asserted (for the first time) that its prior recognition of Excelsior was beyond the Board's statutory authority. The court sustained, with leave to amend, the Board's demurrer to the petition for writs of mandate. The trial court overruled the demurrer to the causes of action for injunctive and declaratory relief. Excelsior filed a first amended petition for writs of mandate and complaint for declaratory and injunctive relief on April 22, 2004. The court sustained the Board's demurrer without leave to amend and dismissed the case.

## STANDARD OF REVIEW

On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) The court does not, however, assume the truth of contentions, deductions, or conclusions of law. (*Id.* at p. 967.) The court must affirm the judgment if any one of the several grounds of demurrer is well taken. (*Ibid.*) However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. (*Ibid.*)

## DISCUSSION

### I

*Business and Professions Code Section 2736*

Excelsior claims the trial court erred in upholding the Board's assertion that section 2736 does not allow it to make prospective evaluations of out-of-state nursing programs and that the Board's previous acceptance of the Excelsior program was beyond its statutory authority. Excelsior argues the section not only allows, but as a practical matter requires, the Board to make prospective evaluations. Excelsior further claims that if this new interpretation of section 2736 is accepted, then the section violates the commerce clause by favoring California nursing schools to the exclusion of out-of-state schools.

## A. *Prospective Evaluation of Out-of-state Programs*

Section 2736, subdivision (a)(2) provides that an applicant must "[h]ave successfully completed the courses of instruction prescribed by the board for licensure, in a program in this state accredited by the board for training registered nurses, or have successfully completed courses of instruction in a school of nursing outside of this state which, in the opinion of the board at the time the application is filed with the Board of Registered Nursing, are equivalent to the minimum requirements of the board for licensure established for an accredited program in this state."

The arguments regarding the interpretation of this statute involve two questions: (1) whether the statute applies to applicants or to programs and (2) whether the phrase "at the time the application is filed" prohibits prospective evaluations of out-of-state programs.

The Board claims the language of the statute is clear in its exclusive application to applicants for nursing licenses, and not to nursing programs. The Board further claims the statute does not authorize prospective evaluations of out-of-state nursing programs. Excelsior disagrees with this narrow focus on the applicant and argues the Board's mandate to evaluate an applicant's coursework consequently requires the Board to evaluate the out-of-state school. Additionally, Excelsior argues the language "at the time the application is filed" does not prohibit the Board from making prospective evaluations, but as a practical matter *requires* such prospective evaluations.

■ We agree with the Board that the statute focuses on the coursework completed by the applicant, not an evaluation of the program attended. The focus of the statute is on *applicants* for nursing licensure in California, not on approval of out-of-state nursing programs. It is the applicant who seeks licensure and it is the applicant's qualifications that the Board evaluates. The Board is charged with protecting the public from unqualified nurses. The nurse administering care, not the out-of-state nursing program, poses the threat to the public.

■ The Board's interpretation that the statute prohibits prospective evaluations of out-of-state programs, however, is unnecessarily narrow. The Board is required to form an opinion *at the time of application* as to whether the coursework completed by an applicant at an out-of-state program is equivalent to the minimum requirements for an accredited in-state program. This does not prevent the Board from prospectively evaluating a program's curriculum and then relying upon that evaluation to form an opinion about the equivalency of the coursework completed by a particular applicant. Nothing in the language of the statute prohibits this activity on the part of the

Board. A prospective evaluation, however, is a discretionary action the Board may take for its own convenience and efficiency. Because the Board must, "at the time the application is filed," determine whether the applicant's coursework meets the minimum California requirements, a discretionary prospective evaluation of a program's curriculum is not a seal of approval binding the Board.

In other words, the Board may choose to evaluate a program and compare its curriculum to the minimum requirements for California schools. The Board may then decide to use this evaluation as an aid when later forming an opinion about the sufficiency of the coursework completed by an applicant who graduated from that program. This prospective evaluation, however, does not give rise to a Board duty to the school to continue recognizing the program's coursework as meeting the minimum California requirements. Any such prospective evaluation is for the Board's convenience only.

Excelsior's expansive assertion that section 2736 *requires* the Board to evaluate out-of-state schools finds no support in the statutory language. Excelsior claims that "common sense dictates that the Board *cannot* determine whether the courses of instruction an applicant completed are equivalent to the requirements of California *unless* the Board evaluates those courses and, consequently, the school offering them." (Italics in original.) The argument erroneously treats as synonymous the terms "courses of instruction" and "school." We agree that the Board must evaluate the courses of instruction an applicant has completed, but this is far different from the Board's determination that a particular out-of-state school's nursing program satisfies minimum California requirements. A student may have completed coursework from more than one out-of-state school, or a student may have completed coursework from both an out-of-state school and an accredited in-state school. The Board's job is to determine if the coursework the applicant has completed satisfies the minimum requirements for licensure. Such an evaluation does not require the Board to evaluate a particular school, but rather to evaluate the competency of the applicant.

Although Excelsior claims to challenge only the Board's interpretation of its authority under the statute, to prevail on appeal Excelsior must establish a right to the Board's prospective evaluation and approval. While section 2736 does not prohibit the Board from choosing to make prospective evaluations of out-of-state schools' programs for its own convenience, efficiency, and consistency, neither Excelsior nor any other out-of-state school has a right to require the Board to make a prospective evaluation.

## B. *Long-standing Interpretation*

■ Excelsior argues the trial court erred in ignoring the Board's long-standing interpretation of section 2736. "[B]ecause of the agency's expertise, its view of a statute or regulation it enforces is entitled to great weight unless clearly erroneous or unauthorized." (*Pacific Legal Foundation v. Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 111 [172 Cal.Rptr. 194, 624 P.2d 244].) This guideline, however, does not prevent the agency, itself, from correcting its own erroneous interpretation of a statute.

Excelsior claims the Board's long-standing recognition of authority, pursuant to section 2736, to conduct prospective evaluations supports Excelsior's argument that section 2736 does not prohibit prospective evaluations. While we agree the Board may prospectively evaluate a school's curriculum, this conclusion does not support a duty to make a prospective evaluation and does not give Excelsior the right to require such evaluation.

■ Furthermore, Excelsior's contention that the Board cannot change its interpretation of section 2736 is wrong. Historical administrative practice, though entitled to great respect in statutory construction, is not controlling where the practice is clearly erroneous or unauthorized. (*State Bd. of Education v. Honig* (1993) 13 Cal.App.4th 720, 764 [16 Cal.Rptr.2d 727].) "In other words, historical practice may be wrong." (*Id.* at p. 765.) An agency is not bound by its prior statutory interpretation if it determines that prior interpretation was in fact erroneous.

## C. *Legislative History of Section 2736*

■ Excelsior argues the trial court erred in sustaining the Board's demurrer without giving Excelsior the opportunity to present the legislative history that supports its interpretation of section 2736. "[W]hen statutory language is clear and unambiguous, resort to the legislative history is unwarranted. [Citations.]" (*Bonnell v. Medical Board* (2003) 31 Cal.4th 1255, 1264 [8 Cal.Rptr.3d 532, 82 P.3d 740].) We have concluded the language of section 2736 clearly does not support Excelsior's claim of a right to have its nursing program prospectively evaluated and permanently approved by the Board. Therefore, it is unnecessary to resort to the statute's legislative history to determine its meaning.

## II

### Commerce Clause

Excelsior contends the Board's revised interpretation of section 2736 violates the commerce clause of the United States Constitution by unreasonably burdening out-of-state schools and benefiting in-state schools. Excelsior argues on appeal that the trial court erred by determining this cause at the demurrer stage and in finding that Excelsior had no standing to bring this claim. We conclude Excelsior's dormant commerce clause claim lacks merit and, therefore, need not address the standing issue.

■ "[A]ny state statute or regulation that impacts domestic interstate or foreign commerce is subject to judicial scrutiny under the commerce clause unless the statute or regulation has been preempted, or expressly authorized, by an act of Congress." (*Pacific Merchant Shipping Assn. v. Voss* (1995) 12 Cal.4th 503, 514 [48 Cal.Rptr.2d 582, 907 P.2d 430] (*Pacific*).) "The commerce clause's implicit, self-executing restriction on the states' power to regulate interstate and foreign commerce is commonly referred to as the 'negative' or 'dormant' commerce clause." (*Pacific, supra,* at pp. 514–515.)

### A. *Facial Discrimination*

■ The first step in analyzing any law subject to judicial scrutiny under the dormant commerce clause is to determine whether it regulates evenhandedly with only incidental effects on interstate commerce, or discriminates against interstate commerce. (*Pacific, supra,* 12 Cal.4th at pp. 516–517.) " 'If a restriction on commerce is discriminatory, it is virtually *per se* invalid.' " (*Id.* at p. 517, italics in original.) " 'By contrast, nondiscriminatory regulations that have only incidental effects on interstate . . . commerce are valid unless "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." ' " (*Ibid.*, citing *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Ore.* (1994) 511 U.S. 93, 99 [128 L.Ed.2d 13, 21, 114 S.Ct. 1345] (*Oregon Waste*).) "The party challenging the statute's validity bears the burden of showing discrimination." (*Pacific, supra,* at p. 517, citing *Hughes v. Oklahoma* (1979) 441 U.S. 322, 336 [60 L.Ed.2d 250, 261–262, 99 S.Ct. 1727].)

"In this context ' "discrimination" simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.' " (*Pacific, supra,* 12 Cal.4th at p. 517, citing *Oregon Waste, supra,* 511 U.S. at p. 99.) "Such discrimination may take any of three forms: first, the state statute may facially discriminate against interstate or foreign

commerce; second, it may be facially neutral but have a discriminatory purpose; third, it may be facially neutral but have a discriminatory effect." (*Pacific, supra,* 12 Cal.4th at p. 517, citing *Chemical Waste Management, Inc. v. Hunt* (1992) 504 U.S. 334, 344, fn. 6 [119 L.Ed.2d 121, 133, 112 S.Ct. 2009].)

Based on allegations in paragraphs 44 and 70 of the petition and paragraph 7 of the complaint, Excelsior initially appears to allege facial discrimination: "The Board's differential treatment of in-state and out-of-state schools is facially discriminatory." However, it is not the Board's implementation of the statute that determines "facial discrimination" but rather the text of the statute. For example, in *Oregon Waste* (cited by Excelsior), the different rates for disposal of solid waste charged to in-state ($0.85 per ton) versus out-of-state ($2.25 per ton) waste constituted facial discrimination. (*Oregon Waste, supra,* 511 U.S. at p. 93.) In this case, however, there is no facial discrimination. Applicants from both in-state and out-of-state schools are subject to the same coursework requirements. (See § 2736, subd. (a)(2).)

Excelsior has not alleged a specific "discriminatory purpose" sought by the statute. Rather, Excelsior's allegations appear to fall within the third form of discrimination—a facially neutral statute that has a discriminatory effect. Excelsior claims out-of-state schools are denied the ability to determine whether their graduates will qualify for licensure in California, while in-state schools have clear notice of whether their graduates will or will not qualify for licensure. "Consequently, the in-state school would receive a huge competitive advantage in trying to attract nursing students who wish to eventually practice in California. While such statutory discrimination may be good for in-state business interests, it is not constitutionally proper."

### B. *Burden on Interstate Commerce Versus Local Benefit*

The relevant question with this form of discrimination is whether the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. (*Pike v. Bruce Church, Inc.* (1970) 397 U.S. 137, 142 [25 L.Ed.2d 174, 178, 90 S.Ct. 844].) In *Pike,* the challenged regulation required the packing of all Arizona-grown cantaloupes in standard state-approved containers identifying them as Arizona cantaloupes. An Arizona grower of high-quality cantaloupes sent its highly perishable crops to the closest packing facility, located in Blythe, California. (*Id.* at p. 139.) Arizona issued an order prohibiting the company from transporting its uncrated cantaloupes outside the state for packing and processing. (*Id.* at p. 138.) Because no Arizona packing plant existed in close proximity, the only way the company could comply with this order was to build its own packing facility at a cost of approximately $200,000. (*Id.* at p. 140.) The court

concluded this order affected interstate commerce because it required the grower to discontinue packing its cantaloupes outside Arizona. (*Id.* at p. 141.) Although the court found that the purpose of the statute, to promote and preserve the reputation of Arizona growers by prohibiting deceptive packaging, was a legitimate state interest, the burden imposed on this company to build its own packing plant in Arizona was unconstitutionally excessive. (*Id.* at pp. 143–145.) The court reasoned, however, that this requirement may have been tolerated if a more compelling state interest were involved. (*Id.* at p. 146.)

The burden Excelsior alleges is that out-of-state schools are no longer as attractive as in-state schools to students who seek licensure in California. While graduates of in-state schools know that they will qualify to apply for California registered nursing licensure, graduates of out-of-state schools "are not allowed such foreknowledge." This lack of notice will deter prospective students who wish to apply for California registered nursing licensure from attending out-of-state schools. This burden on out-of-state schools must then be compared to the benefit California receives from the statute. Section 2736 sets forth the requirements for licensure in California and section 1426 of title 16 of the California Code of Regulations specifically identifies the required coursework. Assurance that all licensed nurses practicing within California have completed coursework that the Board views as the minimum level required for competency is an important benefit to the state. Additionally, in the context of dormant commerce clause challenges, regulations that touch upon safety are those that " 'the Court has been most reluctant to invalidate.' " (*Kassel v. Consolidated Freightways Corp.* (1981) 450 U.S. 662, 670 [67 L.Ed.2d 580, 586, 101 S.Ct. 1309], quoting *Raymond Motor Transp., Inc. v. Rice* (1978) 434 U.S. 429, 443 [54 L.Ed.2d 664, 676, 98 S.Ct. 787].) Further, courts recognize the plenary power of the state to regulate the practice of medicine. (*Mann v. Board of Medical Examiners* (1947) 31 Cal.2d 30, 41 [187 P.2d 1].)

The alleged burden on Excelsior, appearing less attractive to nursing students, is clearly outweighed by the benefit to the citizens of California of ensuring a minimum level of competency in its licensed nurses. California has the right and responsibility to regulate nursing within the state for the protection of its citizens regardless of any incidental impact on interstate commerce. Furthermore, although California can effectively regulate and evaluate in-state schools, out-of-state schools are subject to the requirements of their own states.

Additionally, we note that any nursing program, in-state or out-of-state, may structure its program to satisfy California's requirements. The record reveals numerous attempts by the Board to assist Excelsior with developing

strategies for coming into compliance with California's requirements. Excelsior chose not to do so. Even though graduates of California schools can be assured that their programs are accredited, such accreditation comes only from meeting the minimum requirements. As a practical matter, graduates from out-of-state programs can be similarly assured of licensure in California as long as their schools meet the minimum California requirements. Excelsior's dormant commerce clause allegation is without merit.

### C. Determination Proper on Demurrer

Excelsior claims this cause of action cannot be dispensed with on demurrer because "the court cannot possibly determine the existence or nonexistence of a discriminatory impact" at the pleading stage. For purposes of this review, we accept all of Excelsior's allegations as true. Excelsior has not established, even assuming the truth of its allegations, that any burden it faces under section 2736 outweighs the important state benefit of ensuring the health and safety of California's citizens. We find, as a matter of law, Excelsior fails to state a cause of action that the statute violates the dormant commerce clause. We therefore conclude the trial court's ruling sustaining the Board's demurrer was proper.

### III

### Administrative Procedures

Excelsior alleges the Board violated statutorily required administrative procedures. It claims the Board (1) denied Excelsior its right to an evidentiary hearing, (2) failed to maintain an administrative record of the decision, and (3) violated administrative procedures by adopting an "underground regulation." Excelsior contends these alleged violations of administrative procedures warrant issuance of a writ of mandate.

### A. Mandate

Excelsior sought a traditional writ of mandate, pursuant to Code of Civil Procedure section 1085, to compel the Board to set aside its February 6, 2004, decision in which it held that Excelsior graduates, like all graduates of out-of-state programs, must meet the minimum California requirements. The Board demurred stating the petition did not state facts sufficient to constitute a cause of action in that Excelsior failed to allege sufficient facts that the Board

failed to perform a ministerial duty or committed a prejudicial abuse of discretion.[3] The trial court sustained the Board's demurrer on this ground.

Excelsior also sought a writ of administrative mandate, pursuant to Code of Civil Procedure section 1094.5, seeking the same relief. The Board demurred to this cause of action, stating the petition did not state facts sufficient to constitute a cause of action in that Excelsior has no legal right to an adjudicatory hearing by law. The trial court sustained the demurrer and ruled as follows: "[Excelsior] has not alleged a right to an evidentiary administrative hearing pursuant to statute or regulation, and [Excelsior] has not alleged facts sufficient to show that [Excelsior] had a due process right to an evidentiary hearing. The alleged prior acceptance by the Board of [Excelsior's] program as being equivalent to the minimum requirements of the Board for licensure established for an accredited program in this state does not rise to the level of a property or liberty interest entitled to due process protection."

It is unclear from Excelsior's brief how it alleges the trial court erred in the rulings regarding Excelsior's petitions for writ of mandate pursuant to both sections 1085 and 1094.5 of the Code of Civil Procedure. In any event, the trial court was correct. Excelsior failed to establish the two basic requirements for issuance of a writ of mandate.

To obtain a writ of mandate pursuant to either section 1085 or section 1094.5 of the Code of Civil Procedure, Excelsior must establish two basic requirements: (1) a clear, present duty upon the part of the respondent and (2) a clear, present, and beneficial right in the petitioner to the performance of that duty. (*California Correctional Supervisors Organization, Inc. v. Department of Corrections* (2002) 96 Cal.App.4th 824, 827 [117 Cal.Rptr.2d 595].)

As discussed at length *ante*, section 2736 confers no duty upon the Board to conduct prospective evaluations of out-of-state programs. The statute requires the Board to evaluate the coursework completed by an applicant. This evaluation, including forming an opinion regarding out-of-state coursework, is a discretionary function. The Board is under no statutory duty to form an opinion until a graduate has applied, even if the Board chooses to conduct prospective evaluations.

Furthermore, administrative mandate pursuant to Code of Civil Procedure section 1094.5 is available " 'only if the decision[] resulted from a "proceeding in which by law: 1) a hearing is required to be given, 2) evidence

---

[3] The Board also demurred on the basis that the "relief requested would compel the Board of Registered Nursing to commit acts which are void, without statutory authority, and against public policy, as a matter of law." Since we uphold the trial court's ruling on the first basis for demurrer, we need not address this second argument.

is required to be taken, and 3) discretion in the determination of facts is vested in the agency." ' " (*McGill v. Regents of University of California* (1996) 44 Cal.App.4th 1776, 1785 [52 Cal.Rptr.2d 466] (*McGill*), citing *Weary v. Civil Service Com.* (1983) 140 Cal.App.3d 189, 195 [189 Cal.Rptr. 442], italics omitted.) The legal right to an evidentiary hearing may be granted by statute, regulation or rule, or by due process if a liberty or property interest is implicated. (See *Pomona College v. Superior Court* (1996) 45 Cal.App.4th 1716, 1727, fn. 10 [53 Cal.Rptr.2d 662] [administrative mandate available if hearing required by statute, organization's internal rules and regulations, or due process]; *Board of Regents v. Roth* (1972) 408 U.S. 564, 569–570 [33 L.Ed.2d 548, 556, 92 S.Ct. 2701] (*Roth*) [prior hearing necessary when deprivation of interests encompassed by Fourteenth Amendment's protection of liberty and property implicated].)

Excelsior failed to establish a right to an evidentiary hearing. Section 2736 does not grant Excelsior a right to an evidentiary hearing and Excelsior cites no other statute, regulation, or rule that grants such a right.

Excelsior claims it is entitled to an evidentiary hearing under due process because it has a property interest, tantamount to a license, in the Board's continued recognition of equivalency. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." (*Roth, supra,* 408 U.S. at p. 577.) The fact that Excelsior graduates enjoyed de facto exemption from section 2736, subdivision (a)(2) requirements for 20 years does not confer a legitimate claim of a property interest upon Excelsior. Thus, Excelsior has no due process right to an evidentiary hearing regarding the Board's decision that Excelsior graduates will be treated the same as graduates from all other out-of-state schools.

We note, however, that the record indicates Excelsior and its counsel corresponded with the Board and participated in numerous meetings with the Board to discuss ways in which Excelsior could modify its curriculum to comply with California's minimum requirements. Excelsior had plenty of opportunity to present its case to the Board. But, since no evidentiary hearing was required by law, there was no need for the Board to maintain an administrative record of these discussions.

Traditional mandate is used to review adjudicatory actions or decisions when the agency is not required to hold an evidentiary hearing or when the duty is ministerial. (*McGill, supra,* 44 Cal.App.4th at p. 1785, citing *Bunnett v. Regents of University of California* (1995) 35 Cal.App.4th 843, 848 [41 Cal.Rptr.2d 567].) A writ cannot be used to control a matter of discretion.

(*Kaiser Foundation Hospitals v. Belshé* (1997) 54 Cal.App.4th 1547, 1558 [63 Cal.Rptr.2d 652].) Where a statute leaves room for discretion, a challenger must show the official acted arbitrarily, beyond the bounds of reason or in derogation of the applicable legal standards. (*California Correctional Supervisors Organization, Inc. v. Department of Corrections, supra,* 96 Cal.App.4th at p. 827.)

Excelsior failed to establish the requirements for traditional mandate. The Board's decision was purely an exercise of discretion, duly authorized under the statute. Excelsior also fails in its attempt to prove the decision issued was "arbitrary and capricious" because the Board abused its discretion by adopting an "underground regulation" establishing an "equivalency standard."

### B. *Underground Regulation*

"An underground regulation is a regulation that a court may determine to be invalid because it was not adopted in substantial compliance with the Administrative Procedure Act (Gov. Code, § 11340 et seq.) . . . ." (*Modesto City Schools v. Education Audits Appeal Panel* (2004) 123 Cal.App.4th 1365, 1381 [20 Cal.Rptr.3d 831].) We will conclude a regulation is an underground regulation if (1) the agency intended it to apply generally rather than in a specific case and (2) the agency adopted it to implement, interpret, or make specific the law enforced by the agency. (*Ibid.*)

Excelsior claims the Board adopted an "equivalency standard" which constituted an underground regulation in violation of the Administrative Procedure Act. Excelsior complains the Board failed to articulate what this "equivalency standard" requires. According to Excelsior, because the Board has adopted this "equivalency standard" as a rule of general application, meaning it will apply to all out-of-state graduates including Excelsior graduates, it is therefore a regulation and is subject to the Administrative Procedure Act.

The trial court properly ruled that the facts alleged are not sufficient to show the adoption of an underground regulation. The Board's action of February 6, 2004, merely confirmed that Excelsior graduates would be required to comply with section 2736. The Board has not created an underground regulation merely by enforcing the actual language of the statute.

Excelsior further claims the "equivalency standard" is unfair because it requires out-of-state applicants and the schools they graduate from to meet exactly the requirements of section 1426 of title 16 of the California Code of

Regulations. We fail to see how it is unfair to require all applicants for nursing licensure in California, whether their coursework is completed in-state or out-of-state, to meet the same minimum requirements.

## DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Cantil-Sakauye, J., concurred.