Filed 1/8/25  C.T. v. Kern County Board of Education CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| C.T., a Minor, etc., et al.,<br><br>        Plaintiffs and Appellants,<br><br>        v.<br><br>KERN COUNTY BOARD OF EDUCATION,<br><br>        Defendant and Respondent;<br><br>KERN HIGH SCHOOL DISTRICT, et al.,<br><br>        Real Parties in Interest and Respondents. | F087562<br><br>(Super. Ct. No. BCV-23-100890-BCB)<br><br><br>**ORDER MODIFYING OPINION (NO CHANGE IN JUDGMENT)** |

It is hereby ordered that the opinion filed herein on December 19, 2024, be modified as follows:

1.  In heading *III.* on page 11, change the word "*Suspension*" to "*Expulsion.*"

Except for the modification set forth, the opinion previously filed remains unchanged.

This modification does not effect a change in the judgment.

FAIN, J.*

WE CONCUR:


HILL, P. J.


LEVY, J.

* Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| C.T., a Minor, etc., et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>KERN COUNTY BOARD OF EDUCATION,<br><br>    Defendant and Respondent;<br><br>KERN HIGH SCHOOL DISTRICT, et al.,<br><br>    Real Parties in Interest and Respondents. | F087562<br><br>(Super. Ct. No. BCV-23-100890-BCB)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Bernard C. Barmann, Jr., Judge.

Weissburg Law Firm, Diane B. Weissburg and Jerry A. Weissburg, for Plaintiff and Appellant.

Schools Legal Service and Melissa D. Allen for Defendant and Respondent.

Lozano Smith, Sloan R. Simmons, Monica Batanero, and Stephanie Holtz, for Real Parties in Interest and Respondents.

-ooOoo-

**INTRODUCTION**

Appellant C.T., a former student at Bakersfield High School, appeals the denial of his writ petition filed under Code of Civil Procedure sections 1085 and 1094.5.[1]  C.T.'s writ petition sought review of respondent Kern County Board of Education's (the "Board") decision to affirm the expulsion order of the Kern High School District and Bakersfield High School (collectively, the "School"), which are the real parties in interest in this suit. C.T. raises a plethora of arguments largely relating to claims of procedural and evidentiary error in the administrative proceeding.  We find no prejudicial error, and therefore affirm the trial court's judgment.

**BACKGROUND**

The critical factual background that underlies C.T.'s suspension and expulsion from Bakersfield High School is largely undisputed.  On September 12, 2022,[2] Dean Alicia Olejnik received an e-mail that came from the aunt of another student (S2), as well as a video of C.T. threatening S2.  The video, which is included in the administrative record before this court, is from a doorbell camera.  It shows C.T. approaching the door and asking for S2 by name.  The person who answers the door refuses to get S2 for C.T. and tells C.T., "We're not handling this right now, bro.  You gotta send your parents, bro, or something else."  C.T. responds, "Bro, he owes me $100."  The person at the door says, "Send your parents," in response to which C.T. shakes his head and says, "Alright, he's not gonna be safe at school."  Dean Olejnik contacted C.T. to discuss the incident,

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

[2] All dates refer to 2022, unless otherwise specified.

and C.T. acknowledged that S2 owed him $100 for "cake pens"[3] S2 had bought from C.T.

On the morning of September 15, school personnel observed C.T. walking to his car in the parking lot of the high school, and then sitting in the back seat of the car with another student during classes.[4] When school personnel made the students return to the school, C.T. began yelling and cursing at them. As C.T. was escorted into the dean's office, the dean's secretary observed him drop a vape pen behind a chair; when confronted, C.T. said, "I tried."

C.T.'s mother was called to come and pick him up, and both C.T.'s mother and stepfather arrived to take him and the car home. Shortly thereafter, C.T. returned to the school, telling school personnel he had been assaulted by his stepfather. Several school personnel, including the school's police officer, responded to C.T.'s car, where C.T.'s stepfather was now sitting in the driver's seat. C.T.'s stepfather advised school personnel it appeared C.T. was trying to conceal something in the vehicle, and C.T.'s mother gave permission for the vehicle to be searched.[5] Inside a backpack in the vehicle, approximately 50 vape pens were located in boxes, along with approximately 30 empty

---

[3] "Cake pens" refers to a type of vaping device commonly sold in marijuana dispensaries in California, which allows the user to inhale a marijuana derivative containing tetrahydrocannabinol (THC).

[4] C.T. claims that he was applying deodorant, which he needed for a medical condition he has called hyperhidrosis. A statement from the student who was with C.T. (S1) states that S1 asked to borrow some deodorant, which C.T. said he had in his car. The precise reason is irrelevant, given that the expulsion was based on C.T.'s drug dealing and threats toward another student, not the fact that C.T. was sitting in the car.

[5] C.T.'s mother contests whether she gave permission for the vehicle to be searched, both now and at the expulsion hearing. Several personnel from the school, however, testified C.T.'s mother gave them permission to search the car. Further, as discussed below, whether consent was given is ultimately irrelevant, as the Fourth Amendment's exclusionary rule does not apply in administrative proceedings. (See Section IV, *infra*.)

vape pen boxes and a clear plastic bag of marijuana under the seat. Additionally, C.T. had approximately $435 in cash in his wallet. C.T. acknowledged owning 20 of the vape pens, but claimed the other 30 belonged to someone else. C.T. advised school personnel that he sold the vape pens for $25 each, but claimed he did not know they contained marijuana. Pictures of the boxes in which the vape pens were contained show the packaging of the vape pens contained imagery and language associated with marijuana, including the word "cake" and pictures of marijuana leaves.

BHS immediately suspended C.T. on that same day, September 15, for five days after discovering the drugs in his possession. Another dean at the school, Bryson Gholston, contacted C.T.'s mother the same day by telephone and advised her that C.T. would be suspended for five days, and possibly would be expelled. Notice was also sent on September 15 that BHS intended to conduct an expulsion hearing. The original notice indicated a suspension conference would be held on September 19; while there is some dispute about when C.T.'s mother received the notice and whether Dean Gholston called C.T.'s mother on September 19, it is clear that no conference or hearing proceeded at that time, as C.T. retained counsel. Notice of the expulsion hearing and applicable rules was sent on September 29.

The expulsion hearing took place over three days, on October 21, October 24, and November 8. The administrative panel that conducted the hearing made findings of fact, including the following: (1) C.T. threatened S2;[6] (2) C.T. had a nicotine vape pen he attempted to inconspicuously drop behind a chair; (3) C.T. had approximately 45 marijuana vape pens in his car; (4) C.T. had approximately $435 in cash on his person; (5) C.T. admitted he sold the vape pens for $25 apiece; and, (6) C.T.'s presence at the school constituted a continuing danger to the physical safety of pupils or others, because

---

[6] The panel also found S2 was later assaulted by another student because S2 had told school personnel C.T. sold him a controlled substance.

4.

he sold and possessed a controlled substance, and threatened to cause physical injury to another student. The administrative panel recommended the School expel C.T. for one year. It appears approximately half of the three-day hearing was not transcribed, due to a malfunction of some sort.

The School adopted this recommendation at a meeting on December 12. Notice of the expulsion was sent on December 13. C.T. appealed the decision to the Board on December 21. A meeting was held by the Board on February 14, 2023, at which the appeal was denied.

C.T. filed a petition on March 17, 2023, seeking a writ of administrative mandamus pursuant to section 1094.5 as well as a writ of mandate pursuant to section 1085. The School demurred on June 26, 2023, and the Board moved for judgment on the pleadings on August 1, 2023. The trial court sustained the demurrer and granted the motion for judgment on the pleadings as to the second cause of action in the complaint, dismissing the writ of mandate sought pursuant to section 1085. Following a hearing on December 15, 2023, the court denied the petition pursuant to section 1094.5. Judgment was entered on January 8, 2024, and notice of appeal was timely filed on February 2, 2024.

## DISCUSSION

### I. Legal Standards

Section 1094.5 provides for the review of "any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested" in an administrative agency. (§ 1094.5, subd. (a).) In a proceeding pursuant to section 1094.5, the court reviews the agency decision to determine whether: (1) the agency acted outside of its jurisdiction; (2) there was a "fair trial"; and (3) there was "any prejudicial abuse of discretion." (§ 1094.5, subd. (b).) "Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order

5.

or decision is not supported by the findings, or the findings are not supported by the evidence." (§ 1094.5, subd. (b).) "Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (§ 1094.5, subd. (c).)

The standard for reviewing the factual findings of the agency hinges on whether the order or decision affects a "fundamental vested right." (*Li v. Superior Court* (2021) 69 Cal.App.5th 836, 845–846.) " 'If the order or decision of the agency substantially affects a fundamental vested right, the trial court, in determining under section 1094.5 whether there has been an abuse of discretion because the findings are not supported by the evidence, must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence. If, on the other hand, the order or decision does not substantially affect a fundamental vested right, the trial court's inquiry will be limited to a determination of whether or not the findings are supported by substantial evidence in the light of the whole record.' " (*Ibid.*) The right to education is fundamental in California. (*Serrano v. Priest* (1976) 18 Cal.3d 728, 765–766.) Nonetheless, even when the trial court exercises independent judgment, it still must "accord a strong presumption of correctness to administrative findings," and "the burden rests upon the complaining party to show that the administrative decision is contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 816–817 (*Fukuda*) [internal quotations and ellipses omitted].)

However, even where "the trial court is required to review an administrative decision under the independent judgment standard of review, the standard of review on appeal of the trial court's determination is the substantial evidence test." (*Fukuda, supra,* 20 Cal.4th at p. 824.) What changes is the reviewing court's focus: if the trial court

exercised independent judgment, "it is the trial court's judgment that is the subject of appellate court review," while if the trial court applied substantial evidence review, this court asks only "whether the agency's findings were supported by substantial evidence, resolving all conflicts in the evidence and drawing all inferences in support of them." (*Ogundare v. Department of Industrial Relations* (2013) 214 Cal.App.4th 822, 828–829.) Thus, where a factual issue involving the sufficiency of the evidence is in question, we review whether the trial court's judgment is supported by substantial evidence.

In proceedings under section 1094.5, as in other circumstances, questions of law are reviewed de novo. (*Nathan G. v. Clovis Unified School Dist.* (2014) 224 Cal.App.4th 1393, 1399.) Generally, review is limited to the matters placed in the administrative record, with certain exceptions. (*Evans v. Department of Motor Vehicles* (1994) 21 Cal.App.4th 958, 977.) As always, we adhere to the "cardinal principle of appellate review," namely, that a "judgment or order of the lower court is presumed correct [, and a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." (*In re Julian R.* (2009) 47 Cal.4th 487, 498–499 [internal quotation marks and italics omitted]; see also *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1103, 1133; *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.)

II.     *The Trial Court Appropriately Dismissed the Section 1085 Claim*

C.T. argues the trial court should not have dismissed his claim under section 1085, and asserts it was proper for him to proceed under both sections 1085 and 1094.5. Since this is a legal question, we review it de novo. (See *In re Bode* (1999) 74 Cal.App.4th 1002, 1004; *Mountain Defense League v. Board of Supervisors* (1977) 65 Cal.App.3d 723, 727–730.)

Section 1085 states "[a] writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person," either "to compel the performance of an act which the law specially enjoins" or "to compel the admission of a party to the use and

7.

enjoyment of a right or office to which the party is entitled[.]" (§ 1085, subd. (a).) That said, adjudicative decisions by lower state administrative bodies usually are reviewed pursuant to section 1094.5, or "administrative mandate." Proceedings pursuant to section 1094.5 are appropriate when the suit inquires into "the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer[.]" (§ 1094.5, subd. (a).)

"The applicable type of mandate is determined by the nature of the administrative action or decision." (*McGill v. Regents of University of California* (1996) 44 Cal.App.4th 1776, 1785.) Typically, "quasi-legislative acts are reviewed by ordinary mandate [under section 1085] and quasi-judicial acts are reviewed by administrative mandate [under section 1094.5]." (*Ibid.*) Prior courts have described the difference by noting that " 'a legislative action is the formulation of a rule to be applied to all future cases, while an adjudicatory act involves the actual application of such a rule to a specific set of existing facts.' " (*Tielsch v. City of Anaheim* (1984) 160 Cal.App.3d 570, 574 (*Tielsch*).) "A petition for administrative mandamus is appropriate when the party seeks review of a determination, finding, or decision of a public agency, made as a result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in a public agency[.]" (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 566–567 [internal quotations omitted]; see also *Bunnett v. Regents of University of California* (1995) 35 Cal.App.4th 843, 848; *Tielsch,* at p. 574.) Thus, where the decision being reviewed is one involving the exercise of discretion by a public agency, officer, or board, a writ of traditional mandate sought under section 1085 is inappropriate. (See *Excelsior College v. Board of Registered Nursing* (2006) 136 Cal.App.4th 1218, 1238–1239.)

Here, it is clear the decision was adjudicative in nature. The School considered only the facts of C.T.'s case, and made a disciplinary decision concerning only him. The Board reviewed only the School's decision regarding C.T., and clearly did not attempt to make any overarching rules to be applied in future situations. Accordingly, the trial court was correct in requiring C.T. to proceed under the administrative mandate statute pursuant to section 1094.5.

The traditional requirements for a proceeding under section 1085 are "(1) [a] clear, present and usually ministerial duty upon the part of the respondent [citations]; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty[.]" (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 205.)

C.T. asserts the Board and the School had a clear, present, and ministerial duty, and he had a corresponding clear, present, and beneficial right, in several areas. These include: (1) the School giving adequate statutory notice; (2) both the School and Board ensuring C.T.'s Fourth Amendment rights were not violated; (3) meeting the substantial evidence test and reviewing that decision, for the School and Board, respectively; (4) the School creating and maintaining a complete record of the expulsion hearing; and (5) the Board appropriately determining whether the School's failure to make a complete record was a prejudicial abuse of discretion.

Of these, it is clear the second, third, and fifth arguments advanced could not be appropriate for section 1085 review, because they are not ministerial. "A 'ministerial duty' is one generally imposed upon a person in public office who, by virtue of that position, is obligated 'to perform *in a prescribed manner* required by law when a given state of facts exists.' " (*City of King City v. Community Bank of Central California* (2005) 131 Cal.App.4th 913, 926, italics added.) The critical feature is that the act must be performed "in a prescribed manner," and "without regard to [the officer's] own judgment or opinion concerning the propriety of such act." (*Ellena v. Department of*

9.

*Insurance* (2014) 230 Cal.App.4th 198, 205.) A writ pursuant to section 1085 does not lie to control the discretion of a public officer. (*Collins v. Thurmond* (2019) 41 Cal.App.5th 879, 914.) Thus, while a public officer can be compelled to act, the manner in which she performs an act involving her discretion cannot be dictated by the court. (*Ibid.*) Even if the legal duty is mandatory, "the duty is discretionary if the [officer] must exercise significant discretion to perform the duty." (*Alejo v. Torlakson* (2013) 212 Cal.App.4th 768, 780.) C.T.'s second, third, and fifth claims are not subject to section 1085 review, because they involve the exercise of considerable discretion on the part of an agency or officer.

Arguably, giving statutory notice and maintaining a record of a proceeding *are* ministerial duties with which the School is charged.[7] However, C.T. has not explained why these issues, assuming error occurred, cannot be adequately addressed in a section 1094.5 proceeding. Even assuming error, C.T. must still show prejudice. (*TriCoast Builders, Inc. v. Fonnegra* (2024) 15 Cal.5th 766, 786.) We have been provided with no explanation as to how C.T. was prejudiced by having his concerns about adequate notice and an adequate record heard in the context of a section 1094.5 proceeding as opposed to one conducted under section 1085, and we can perceive none. Moreover, an order compelling the School to give further notice claimed to be lacking or maintain a record of the proceedings which does not exist would be meaningless, as the hearing has already occurred. The relief that could be ordered under section 1085—i.e., an order directing the School to give notice of a hearing that happened in 2022—is moot. (See *Agnew v. City of Los Angeles* (1958) 51 Cal.2d 1, 2 [request for interim injunctive

---

[7] The same cannot be said of the Board's review of those decisions, which considers numerous factors, including the existence of prejudice or harm. (See Educ. Code, § 48922.) Because determining whether prejudice existed upon the facts of a given case involves the exercise of considerable discretion, it is not ministerial and is not appropriately the subject of a petition pursuant to section 1085.

10.

relief moot following final judgment]; *Daily Journal Corp. v. County of Los Angeles* (2009) 172 Cal.App.4th 1550, 1557 [writ pursuant to section 1085 moot where challenged contract had already expired].)  Accordingly, we find no reversible error in the trial court's ruling on demurrer.

> III.     *The Trial Court Did Not Err in Finding the Board Did Not Abuse Its Discretion in Upholding the Suspension Despite the Missing Portion of the Hearing Transcript*

C.T. argues the trial court erred when it concluded the Board did not abuse its discretion by upholding the School's suspension and expulsion of C.T., despite the School violating Education Code section 48918's requirement that the School prepare a record of the hearing.[8]  Though convoluted, C.T. makes clear he is alleging the Board abused its discretion when it failed to find the School's failure to ensure a record of the entire proceeding was recorded was itself an abuse of discretion.  We are not convinced.

California law requires a record of an expulsion hearing be made, and states the "record may be maintained by any means, including electronic recording, so long as a reasonably accurate and complete written transcription of the proceedings can be made." (Educ. Code, § 48918, subd. (g).)  It appears undisputed this did not occur.  However, the Board's role in reviewing the School's decision is limited to four questions:  (1) whether the School acted "without or in excess of its jurisdiction"; (2) where the School

---

[8] C.T. also includes a brief argument that the School violated Education Code section 48919 by failing to timely provide a complete record to C.T.  It is unclear whether this argument is premised on the failure to capture a complete record or the failure to provide it within ten days of a written request.  C.T. asserts the record was provided on January 31, 2023, which would be more than ten days after the hearing ended, but provides no citation to the record to support this.  We treat arguments without adequate record citations as forfeited.  (*South County Citizens for Smart Growth v. County of Nevada* (2013) 221 Cal.App.4th 316, 331; *Estate of Collins & Flowers* (2012) 205 Cal.App.4th 1238, 1251, fn. 11.)  Further, even assuming this date is correct, there is no explanation of how C.T. was prejudiced by any delay that might have occurred.

11.

conducted a "fair hearing"; (3) whether "there was a prejudicial abuse of discretion in the hearing"; and (4) whether "there is relevant and material evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing." (Educ. Code, § 48922, subd. (a).) The only one of these questions C.T. invokes here with any clarity is the third, and he argues the trial court should have found "there was substantial evidence that [the Board] abused its discretion in finding that [the School] met all Education Code procedural requirements, and that [C.T.] was prejudiced by the finding."

C.T. points to nothing which indicates prejudice here due to a failure to record the entirety of the proceedings. According to C.T., the full and complete record would have included all of C.T.'s objections to the evidence presented and "the exclusion of cross-examination testimony," and that this prejudiced him. However, C.T. does not explain *how* this was prejudicial, even in broad strokes. There is no identification, for instance, of what types of objections were leveled against this evidence, such that the challenged evidence might well have been excluded.[9] Nor does C.T. identify how the evidence he believes would have been excluded was *material* to the School's decision, thus demonstrating the objections might well have made a difference to the outcome of the proceeding. C.T. also does not explain what cross-examination "evidence"[10] he was

---

[9] This is particularly relevant, given that technical rules of evidence do not apply in these proceedings, and that factfinders may rely on any kind of evidence, so long as it is relevant, "upon which reasonable persons are accustomed to rely in the conduct of serious affairs." (Educ. Code, § 48918, subd. (h)(1).)

[10] This phrasing strikes us as somewhat odd. Generally, the use of extrinsic evidence during a witness's testimony is fairly limited, for instance, to the use of a prior inconsistent statement, and even then, is often subject to limitations. (See, e.g., *People v. Kidd* (1961) 56 Cal.2d 759, 765–766 [noting limitations on the introduction of prior inconsistent statements to impeach ongoing testimony during cross-examination]; *People v. Moses* (1972) 24 Cal.App.3d 384, 394–396 [discussing limitations on admission of other extrinsic evidence to impeach].) It is hard to imagine—particularly

12.

prevented from presenting and how it might have changed the outcome of the proceeding. While counsel might not have perfect recall of the objections and the testimony, counsel should have been able to provide *some* declaration to the trial court showing the substance of the testimony and its effect on the proceeding, from which it could be argued the failure to transcribe likely harmed C.T. We cannot and do not presume prejudice. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 267 ["An appealed judgment is presumed to be correct. We will indulge all intendments and presumptions to support the judgment on matters as to which the record is silent and prejudicial error must be affirmatively shown."].) We find no error in the trial court's analysis, absent a sufficient explanation of prejudice.

    *IV.  Alleged Fourth Amendment Violations are Inapplicable*

  C.T. argues the trial court erred when it failed to find the Board had abused its discretion by not finding the searches of C.T.'s car violated the Fourth Amendment. However, C.T. also readily admits the exclusionary rule does not apply to school disciplinary proceedings. (See, e.g., *Department of Transportation v. State Personnel Bd.* (2009) 178 Cal.App.4th 568, 576–577; *Gordon J. v. Santa Ana Unified School District* (1984) 162 Cal.App.3d 530, 544 ["we hold the exclusionary rule inapplicable in high school disciplinary proceedings"]; cf. *Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1017 fn. 9; *In re William G.* (1985) 40 Cal.3d 550, 567 fn. 17.) The exclusionary rule is, of course, the customary and well-established remedy for a Fourth Amendment violation. (See *Wong Sun v. United States* (1963) 371 U.S. 471, 485 ["The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result" of a Fourth Amendment violation]; *Mapp v. Ohio* (1961) 367 U.S. 643, 655–656.)

---

without explanation—what extrinsic evidence C.T. hoped to introduce that would be relevant enough for admission, even in a relaxed evidentiary setting such as this.

13.

C.T. suggests the remedy to be applied is "injunctive and declaratory relief for the denial of Student's constitutional rights, resulting in the reversal of the expulsion decision[.]" However, C.T. provides no authority showing the Fourth Amendment is or should be enforceable in such a manner. The Supreme Court has generally held dismissal of a proceeding is not an appropriate remedy for a Fourth Amendment violation, which is generally limited to the exclusionary rule or provable damages, in an appropriate case. (*See Hudson v. Michigan* (2006) 547 U.S. 586, 591 [describing the exclusionary rule— not dismissal of a proceeding—as the "last resort,"]; *id.* at pp. 596–598 [describing availability of civil damages for Fourth Amendment violations]; *United States v. Morrison* (1981) 449 U.S. 361, 366 ["[W]e have not suggested that searches and seizures contrary to the Fourth Amendment warrant dismissal of the indictment. The remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression."].) Further, injunctive relief is forward-looking, and C.T. does not suggest he is at future risk of being searched by school officials, and thus he lacks standing to seek such a remedy. (*Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 1004 ["for standing to seek the prospective relief of an injunction, a plaintiff must show a likelihood he will be harmed in the future if the injunction is not granted"]; see also *Hodgers-Durgin v. de la Vina* (9th Cir. 1999) 199 F.3d 1037, 1044 ["[W]e believe that it is not sufficiently likely that [plaintiffs] will again be stopped by the Border Patrol. In the absence of a likelihood of injury to the named plaintiffs, there is no basis for granting injunctive relief"]; *McDonald v. County of Sonoma* (N.D. Cal. 2020) 506 F.Supp.3d 969, 988–989.)

Further, we note there is substantial evidence in the administrative record that C.T.'s mother and stepfather gave consent to search the car. Consent obviates the warrant requirement of the Fourth Amendment, and can be validly obtained from anyone with either actual or apparent authority to give such consent. (*Espinosa v. City and County of San Francisco* (9th Cir. 2010) 598 F.3d 528, 533; *United States v. Enslin* (9th

14.

Cir. 2003) 327 F.3d 788, 793–794.) Thus, there is substantial evidence from which the trial court could find no Fourth Amendment violation occurred.[11]

For both these reasons, we affirm the trial court's denial of the petition based on the alleged Fourth Amendment violations.

*V.      C.T. Does Not Show Prejudicial Error Occurred by the Alleged Procedural Violations*

C.T. next argues the trial court erred when it found the Board did not abuse its discretion by affirming the School's expulsion, in light of the alleged procedural violations that occurred, namely, the failure to give adequate notice and the failure to hold pre-suspension and expulsion meetings. The trial court determined no prejudicial abuse of discretion occurred. For the reasons given below, we affirm the trial court.

First, C.T. makes separate arguments related to whether adequate notice was provided of the initial suspension, the extension of the suspension, and the subsequent expulsion. Under the Education Code, a school principal may suspend a student for up to five school days. (Educ. Code, § 48911, subd. (a).) Any such suspension "shall be preceded by an informal conference" between the principal or another school representative and the student, at which the student will be told why they are being suspended and given the opportunity to "present the pupil's version and evidence in the pupil's defense." (Educ. Code, § 48911, subd. (b).) There are no other requirements of notice prior to a suspension, and even this informal conference may be forgone where an "emergency situation exists." (Educ. Code, § 48911, subd. (c).) Additionally, a school employee "shall make a reasonable effort" to contact the student's parent or guardian about the suspension, and ultimately must provide written notification of the suspension. (Educ. Code, § 48911, subd. (d).)

_____

[11] It is not our place to reweigh the evidence, but only to ask whether substantial evidence exists to sustain the trial court's finding. (See *Fukuda*, *supra*, 20 Cal. 4th at p. 824.)

The record shows C.T. met with a representative of the school on the day of the incident, and was given an opportunity to explain himself. He was asked about the vape pens located in his car and the large amount of cash he possessed. C.T. advised that 20 of the 50 vape pens in the car were his, and the remaining 30 belonged to another person. However, C.T. said he did not know who the owner of the other vape pens was. Further, he acknowledged selling the vape pens for $25 each. This seems to meet the requirements of Education Code section 48911, subdivision (c) for a pre-suspension informal conference with the student, as the student was given the opportunity to—and did—provide his own statements about the drug paraphernalia, in which he acknowledged both ownership and sales of the pens. Further, the record shows one of the school's deans also spoke with C.T.'s mother over the phone on September 15, and explained why C.T. was being suspended, namely for possession and sale of drug paraphernalia. C.T. and his mother were given adequate notice of the initial suspension.

A suspension may be extended by a school pending an expulsion hearing where certain school representatives have determined "that the presence of the pupil at the school … would cause a danger to persons or property or a threat of disrupting the instructional process." (Educ. Code, § 48911, subd. (g).) This extension of a suspension must be preceded by "a meeting in which the pupil and the pupil's parent or guardian are invited to participate." (*Ibid.*) No other formal requirements are necessary for this meeting, and the statute does not require that the meeting actually occur, merely that the student and their guardian be invited to participate in such a meeting.

Such an invitation was extended here. On September 20—within the five school days permitted for an initial suspension—a school dean spoke with C.T.'s father, who indicated the family was retaining legal counsel, and they agreed to cancel an anticipated

meeting the following day to allow for the family to retain an attorney.[12]  The dean also called C.T.'s mother on the same day, and received no answer.  This is a sufficient invitation to meet prior to the extension of the suspension.  C.T.'s parents' refusal to meet because they wished to retain legal counsel does not create a procedural violation under Education Code section 48911, subdivision (g).

Perhaps unsurprisingly, given the increased harshness of the punishment, an expulsion hearing has more specific notice requirements than required prior to suspension.  Written notice of an expulsion hearing must be provided at least ten days prior to the hearing, and shall include:  (1) the date and time of the hearing; (2) a specific statement of facts and charges upon which the expulsion is based; (3) a copy of the disciplinary rules that relate to the matter; (4) a notice of the obligation to disclose the expulsion to other schools; and (5) notice of the opportunity to present evidence, question witnesses, and be represented by counsel in the proceeding.  (Educ. Code, § 48918, subd. (b).)  In this case, a detailed notice of recommendation for expulsion and expulsion hearing was sent on September 29, which detailed the drug possession, sales, and threats to another student as the reasons for the expulsion.  It included notice of C.T.'s rights to present evidence, inspect documents, be represented by counsel, and question witnesses.  The notice also included copies of the related disciplinary rules.  As noted above, the expulsion hearing took place over three days, starting on October 21, indicating notice was sent more than ten days prior to the start of the hearing.  C.T.'s briefing seems to acknowledge receipt of these documents, but does not attempt to explain how this was insufficient notice.

Even were we to find a procedural violation amidst these myriad arguments, we see no prejudice here from any claimed violations.  C.T. knew what he was being accused

---

[12] While C.T. disputes some of the precise details surrounding notice, there was substantial evidence in the record for the trial court to conclude this call occurred.

of, and was given the opportunity to informally explain his possession and sales of drug paraphernalia. He did so, and candidly admitted to both possessing and selling the vape pens. C.T. provides no explanation here about how further opportunities to meet with school officials might have led to him not being suspended or expelled. Nor does C.T. provide any indication he was surprised by the allegations against him at the expulsion hearing, that he was unable to prepare for the expulsion hearing, or that he was in any other way prejudiced in a way that would have impacted the outcome of the proceedings. C.T. claims he suffers prejudice from these errors because his future interests are harmed by an expulsion appearing on his academic record. While we have no doubt this is true, this is not the type of prejudice involved in this inquiry, which focuses on whether the outcome of the proceeding has been impacted. (*In re James F.* (2008) 42 Cal.4th 901, 918 ["If the outcome of a proceeding has not been affected, denial of a right to notice and a hearing may be deemed harmless and reversal is not required."].) Because C.T. cannot explain how or why he would not have been suspended or expelled if he had been given additional notice or opportunities to meet with school officials, we would not find prejudice in any event.

  VI. *Material Evidence was Not Improperly Excluded, and C.T. Fails to Show How Any Such Exclusion Prejudiced Him*

  C.T. next argues certain evidence he attempted to present at the expulsion hearing was improperly excluded, and other evidence against him was improperly admitted, and that each of these errors prejudiced him. The trial court found no prejudicial error. We find no error or prejudice, and affirm.

  Concerning the purportedly improperly admitted evidence, C.T.'s briefing fails to specify what this evidence even was, let alone support the contention that it was improperly admitted by legal authority. This alone is enough to forfeit the argument. (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948 ["We repeatedly have held that the failure to provide legal authorities to support arguments forfeits

contentions of error. "].) Nevertheless, reviewing the record, it appears the evidence C.T. claims was improperly admitted was the notice packet of the expulsion hearing, and its admission was purportedly improper because it was, in some way unclear to us, not fully previously disclosed. We note the packet was dated September 29, and therefore was sent approximately a month before the expulsion hearing began, a fact apparently accepted by the School, the Board, and the trial court. Because there is substantial evidence this packet was sent on September 29, we are not free to second guess that fact found below. Even assuming this hearing packet was improperly admitted, it is hardly material to the expulsion, as it is not evidence of any wrongdoing on C.T.'s part. It is merely notice of the charges against him. Accordingly, even if this issue was not forfeited, and error existed, there is no prejudice.

The material evidence C.T. sought to introduce which was excluded appears to have largely been a hearing brief. While formal evidentiary rules do not apply to these proceedings (Educ. Code, § 48918, subd. (h)(1); see also Gov. Code § 11513, subd. (c); *Big Boy Liquors, Limited v. Alcoholic Beverage Control Appeals Bd.* (1969) 71 Cal.2d 1226, 1230), it is axiomatic that briefs are not evidence. (*Muskan Food & Fuel, Inc. v. City of Fresno* (2021) 69 Cal.App.5th 372, 389–390 [citations to a brief are not evidence]; *In re Marriage of Pasco* (2019) 42 Cal.App.5th 585, 591 ["A trial brief is not evidence, it is argument."]; *Dickinson v. Cosby* (2019) 37 Cal.App.5th 1138, 1162 fn.8 [same].) We have reviewed the brief included in the administrative record, and it contains no sworn statements and no evidence. Failure to admit a brief into evidence, when it clearly is not evidence and is argument, is not error.

Additionally, C.T. claims there was prejudice from barring further testimony about his medical condition of hyperhidrosis, or excessive sweating.[13] However, testimony

---

[13] Again, this evidence was presented to explain why C.T. first went to his car in the parking lot of the school on the day in question, purportedly to change his shirt and put on deodorant. The School noted at the expulsion hearing that it did not dispute this.

19.

was introduced about this medical condition at the hearing, and the hearing officer only cut off this line of questioning when it became cumulative about an undisputed factual issue. There was no error in limiting testimony about an immaterial issue.

Again, even if there was error, it was not prejudicial. Nothing in the brief, nor the fact that C.T. might suffer from hyperhidrosis, was likely to have changed the School's decision to expel him. The core facts of this proceeding are not meaningfully disputed. C.T. acknowledged to school officials that at least some of the found vape pens were his, and that he sold them for $25 each. Further, there was video evidence of C.T. threatening another student who he claimed owed him money. In light of this significant evidence, there is no reasonable possibility that excluding C.T.'s brief or the cumulative evidence of his hyperhidrosis changed the outcome of the proceeding.

VII.    *There Was Substantial Evidence to Support the Board's Finding and C.T.'s Claims of Evidentiary Error are Misplaced*

C.T. claims next the trial court erred when it found the Board did not abuse its discretion in finding there was substantial evidence to support the expulsion decision. C.T. presents a list of evidentiary complaints in this section of the brief, claiming there was no substantial evidence to support the expulsion charges for the following reasons: (1) no testing of the vape pens was done; (2) no criminal charges were filed; (3) there were minor inconsistencies in the statements of various witnesses; (4) C.T. did not have the keys to the car the drugs were in when the drugs were found; and (5) the brown backpack in which the drugs were found did not belong to C.T. C.T. also renews evidentiary objections to certain portions of testimony throughout this argument, claiming the testimony was speculation and hearsay. Lastly, C.T. claims there was no substantial evidence to support the charge he threatened another student, because the video was not properly authenticated. The trial court found there was evidence to support the expulsion on both grounds. We move through each of C.T.'s arguments briefly in their turn.

20.

We review the trial court's decision to determine whether substantial evidence supported its findings. (*Nightlife Partners v. City of Beverly Hills* (2003) 108 Cal.App.4th 81, 87.) If there is conflicting evidence, "we view the evidence in the light most favorable to the trial court's decision." (*Ibid.*) Substantial evidence is that "of ponderable legal significance, which is reasonable in nature, credible and of solid value." (*Lusardi Construction Co. v. Department of Industrial Relations* (2024) 102 Cal.App.5th 1329, 1343, internal quotations omitted.) This substantial evidence standard is built into the framework of the Education Code, which states the decision "to expel a pupil shall be based upon substantial evidence relevant to the charges adduced at the expulsion hearing or hearings. Except as provided in this section, no evidence to expel shall be based solely upon hearsay evidence." (Educ. Code, § 48918, subd. (f)(2).) The statute notes that "[t]echnical rules of evidence shall not apply to the hearing, but relevant evidence may be admitted and given probative effect only if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs." (Educ. Code, § 48918, subd. (h)(1).) Further, given C.T.'s frequent arguments about various evidence being hearsay, we specifically note that because the statute says "no evidence to expel shall be based *solely* upon hearsay," (Educ. Code, § 48918, subd. (f)(2), italics added), it implies hearsay evidence *is* admissible, so long as it is not the only evidence.

First, C.T. claims there was no substantial evidence he was selling marijuana, because no testing was performed on the substances found. School personnel testified they found a plastic bag containing marijuana.[14] Further, some of the boxes of vape pens had pictures of marijuana leaves on them, and all of them were labeled with the printed term "CAKE." Given such THC-containing items are regularly available for commercial

---

[14] One witness stated they found a bag with a "green substance in it," which they "would assume was marijuana," even though they performed no testing. However, even if this witness did not feel comfortable identifying a substance as marijuana, other school personnel did.

sale to adults in this state, and these boxes bore the appearance of such commercially sold items, the School was free to conclude, as a factual matter, that these pens contained THC and/or marijuana derivatives. While C.T. was also free to attack this conclusion as a factual matter, and did in fact criticize the lack of testing in arguments to the expulsion committee, it is clear neither the committee nor the trial court was convinced. Further, C.T. admitted to selling the vape pens. The record contains substantial evidence from which the trial court could conclude C.T. possessed and was selling marijuana derivatives.

The fact that Kern County did not file additional criminal charges does not change this analysis. There are myriad reasons why a prosecutorial agency may choose not to proceed with certain charges. Here, C.T. had already been issued a citation by the School's police officer. A letter from the Kern County Probation Department advised C.T.'s parents it did not intend to pursue further legal action because the Department felt that "you, as an interested parent, can adequately handle the situation." Notably, it did not say it was not pursuing further proceedings because it was unsure whether the citation had merit. Kern County's prosecutorial decision is of no significance here.

The argument that the discrepancies between testimony were so severe as to render the evidence against C.T. insubstantial is not well-taken. Only two examples are identified here with citations to the record.[15] The first relates to whether C.T. was under the influence of drugs on the day in question. This is irrelevant; whether C.T. was impaired at school was not a basis for his expulsion. He was expelled for selling drugs at school and threatening another student. The other discrepancy relates to whether the large amount of cash C.T. had on his person was found during the first or second search. Again, this is irrelevant; C.T. was not suspended or expelled for possessing cash. These

---

[15] We treat the other referenced discrepancies, for which no record citations are included, as forfeited arguments. (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.)

22.

discrepancies do not in any way speak to the evidence showing C.T. possessed marijuana vape pens which he freely admitted to selling.

C.T. argues there was no substantial evidence the drugs were his, because at the time the drugs were found, he was not in possession of the keys to the car, which his stepfather had taken from him when C.T. was picked up by his parents at the school. This argument borders on frivolity. It was undisputed C.T. had driven the car to school, and his parents were called to come pick him up when he was found with his own vape pen. It was therefore reasonable for the trial court to conclude the vape pens in the car were his, particularly since *he admitted they were*. Whether the keys had been taken from him by his stepfather in the minutes preceding the search is irrelevant.

Next, C.T. argues that, since his backpack was black, and the drugs were found in a brown backpack in the car, they could not have been his, and therefore there is no substantial evidence he possessed or was selling drugs. This, again, ignores the substantial evidence that C.T. himself acknowledged ownership of 20 of the vape pens, and told school personnel he was selling them for $25 apiece.

C.T. spends some time arguing there was no substantial evidence because some of the witnesses' testimony was based on hearsay or lacked personal knowledge. Specifically, C.T. criticizes the testimony of Dean Gholston, who testified S2 told him he had been threatened by C.T. However, this testimony is supported by a video of C.T. threatening S2 while speaking to a relative of S2's. Videos are not hearsay. (*People v. Cooper* (2007) 148 Cal.App.4th 731, 746 (*Cooper*) ["Photographs and videotapes are demonstrative evidence, depicting what the camera sees. [Citations.] They are not testimonial and they are not hearsay[.]"]; see also *People v. Garton* (2018) 4 Cal.5th 485, 506 (*Garton*); *People v. Leon* (2015) 61 Cal.4th 569, 603 (*Leon*) ["Only people can make hearsay statements; machines cannot."].) Because there is video showing C.T. threatening S2, the evidence of C.T.'s threats is not *solely* based on hearsay. (Educ. Code, § 48918, subd. (f)(2).) Further, the testimony of a school dean about threats

reported by a student from another student is "the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs." (Educ. Code, § 48918, subd. (h)(1).)

The next argument advanced by C.T. is that portions of the testimony of Officer Padilla were hearsay, noting she was not present for the first or second searches. However, other witnesses, such as Steven Perryman, Jose Palacios, Florentino Hernandez, and Alicia Olejnik were present for one or both searches, and these witnesses also testified. Therefore, any evidence about these searches received from Officer Padilla, even if it was hearsay, was permissible, because the evidence related to these searches was not "solely" hearsay. (Educ. Code, § 48918, subd. (f)(2).) Because "[t]echnical rules of evidence shall not apply to the hearing" (Educ. Code, § 48918, subd. (h)(1)), the mere fact additional evidence was admitted that might be hearsay is insufficient to render it unsupported by substantial evidence.

C.T. also complains other witnesses—the aunt of the student he threatened, S2 (the threatened student), and another student who was with C.T. on the day the drugs were found (S1)—did not testify at the hearing, and contemporaneous written statements from them were hearsay.[16] Again, hearsay is not inadmissible in these proceedings. (Educ. Code, § 48918, subds. (f)(1), (h)(1).) C.T. makes no representation this hearsay was the *only* evidence of his threats against S2, nor could he, as video evidence depicts the threats. Further, C.T.'s complaint that these witnesses were not available for cross-examination is not meritorious. He provides no authority to support the position that

---

[16] According to C.T., some of these statements were handwritten, and were illegible. However, C.T. then acknowledges he was provided with typed versions of these statements in advance of the hearing. We have reviewed the handwritten statements. The statement of S1 appears largely legible, and we see no apparent differences between the handwritten and typed versions. The statement of S2 is less legible, but the typed version shows it contains no significant information about the threats that is not included on the video already in the record. We find no prejudicial error based on the legibility of the written statements.

every witness is required to give live testimony, nor could he, since—again—the statutory rules comprehend hearsay will be admitted. (*Ibid.*) Further, C.T. was provided with the statements in advance and had the means to compel personal attendance through the issuance of subpoenas, if he truly believed live testimony and cross-examination were critical. (See Educ. Code, § 48918, subd. (i)(1) ["Before the hearing has commenced, the governing board of the school district may issue subpoenas at the request of … the pupil, for the personal appearance of percipient witnesses at the hearing."].)

Finally, C.T. claims there is no substantial evidence of him threatening S2, because the video was unauthenticated, and the e-mail by which S2's aunt forwarded the video to the School was hearsay. Again, hearsay is admissible in these proceedings, technical rules of evidence do not apply, and a video is not hearsay. (Educ. Code, § 48918, subds. (f)(1), (h)(1); *Garton, supra*, 4 Cal.5th at p. 506; *Leon, supra*, 61 Cal.4th at p. 603; *Cooper, supra*, 148 Cal.App.4th at p. 746.) A video of C.T. threatening S2 is "the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs." (Educ. Code, § 48918, subd. (h)(1).) C.T. does not dispute he is the person depicted on the video threatening S2, nor does he suggest any way in which the video is not authentic. We find no error in the failure to authenticate the video under technical rules of evidence which, again, do not apply in these proceedings.

Lastly, we note that, even assuming error, none of these claimed evidentiary issues would have changed the outcome of the proceeding. C.T. was expelled for two reasons—selling drugs and threatening another student. Selling drugs requires mandatory expulsion under the Education Code. (Educ. Code, § 48915, subd. (c)(3) ["The principal or superintendent of schools … shall recommend expulsion of a pupil that he or she determines has committed any of the following acts at school … : [¶] … [¶] (3) Unlawfully selling a controlled substance."].) The School was permitted, but not required, to expel C.T. upon finding that he threatened S2, provided it concluded that, "[d]ue to the nature of the act, the presence of the pupil causes a continuing danger to the

25.

physical safety of the pupil or others." (Educ. Code, § 48915, subd. (b).) C.T. admitted to selling drugs at school, and video evidence captured his threats to S2. There is no serious dispute about either of these facts, and each alone is sufficient to warrant C.T.'s expulsion. The former required mandatory expulsion, and the latter, threatening another student by saying he "won't be safe at school" because he owed C.T. money, certainly permitted the trial court to conclude C.T.'s presence was a continuing danger to S2's physical safety. Because none of the claimed evidentiary issues would have changed these core facts, even assuming certain evidence was improperly admitted, there was no prejudice.

### VIII. *Education Code Section 48922*

C.T.'s penultimate argument is that the Board either misunderstood or misapplied its role in the expulsion appeals process, by paying attention to evidence of whether or not C.T. committed the acts he was accused of, rather than whether he was prejudiced by not receiving a fair hearing. This argument is fairly confusing. We agree with C.T. that the Board's role in reviewing the decisions was limited. The Board acknowledged as much, both at the hearing and in its written decision. Specifically, the Board's review was appropriately limited to: (1) whether the School acted in excess of its jurisdiction; (2) whether there was a fair hearing; (3) whether there was a prejudicial abuse of discretion; and (4) whether there was relevant and material evidence which was improperly excluded from the hearing. (Educ. Code, § 48922, subd. (a).) The statute clarifies that an abuse of discretion is established if the School: (1) has not met its procedural requirements; (2) the decision to expel is not supported by the required findings; or (3) the findings are not supported by the evidence. (Educ. Code, § 48922, subd. (c).) Further, the abuse of discretion still must be prejudicial to warrant reversing the School's decision. (Educ. Code, § 48922, subd. (a).)

C.T.'s argument here focuses on certain comments of the Board's members discussing the appeal, one of whom stated there was "ample evidence" that C.T. "was

26.

possessing … these narcotic items for purposes of sales," and that there was "ample evidence that you did threaten another student." Another indicated it was unsurprising an attorney could find technical errors in a three-day evidentiary hearing, and then noted that what he "care[d] about" was whether C.T. committed the acts warranting the expulsion. These statements and others included in the transcript suggest the Board understood that any errors occurring in the proceeding must indicate a *prejudicial* abuse of discretion to warrant reversal. The Board members seem to be indicating none of the claimed errors were likely to have changed the outcome of the proceeding, since there was undisputed evidence C.T. admitted to selling drugs, and video evidence of him threatening another student. We are hard-pressed to see any cognizable claim for error merely because the Board applied a prejudice analysis it was required by statute to apply. While we understand C.T. wanted the Board to focus on other issues, rather than the undisputed evidence of C.T.'s drug dealing and threat to another student, its mere failure to agree with these arguments and its refusal to find prejudice in them is not error.

IX. *The Court Did Not Abuse Its Discretion in Permitting an Over-Sized Brief*

We briefly address C.T.'s final argument, which is that the trial court abused its discretion in permitting the School to file a 22-page brief, instead of a 15-page brief. No one doubts courts have discretion to permit the filing of longer briefs, and C.T. does not suggest otherwise. C.T. argues he was prejudiced by having to respond to an oversized brief in only a 10-page reply brief. However, C.T. points us to nowhere in the record where he requested leave to file an oversized reply brief or a supplemental brief, which the trial court surely would have granted. Given C.T. did not request the very thing he now claims prejudiced him, we conclude he has not preserved this issue for appeal. (*Doers v. Golden Gate Bridge, etc. District* (1979) 23 Cal.3d 180, 184 fn.1 [" 'An appellate court will ordinarily not consider procedural defects or erroneous rulings … where an objection could have been but was not presented to the lower court by some appropriate method … [I]t is *unfair to the trial judge and to the adverse party* to take

27.

advantage of an error on appeal when it could easily have been corrected at the trial.' "];
*People v. York* (1980) 108 Cal.App.3d 779, 788.)  In any event, C.T. has not provided a convincing explanation of what might have been included in any additional briefing that could have changed the trial court's mind, indicating a lack of prejudice.

## DISPOSITION

Given the foregoing, the trial court's decision is affirmed.  Respondents and real parties in interest shall recover their costs on this appeal.


FAIN, J.*

WE CONCUR:


HILL, P. J.


LEVY, J.


---

*Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.