[No. G040929. Fourth Dist., Div. Three. June 25, 2009.]

NATURIST ACTION COMMITTEE et al., Plaintiffs and Respondents, v. DEPARTMENT OF PARKS AND RECREATION et al., Defendants and Appellants.

## COUNSEL

Edmund G. Brown, Jr., Attorney General, Mary E. Hackenbracht, Assistant Attorney General, Carol A. Squire and Deborah Fletcher, Deputy Attorneys General, for Defendants and Appellants.

Law Office of Elva P. Kopacz and Elva P. Kopacz for Plaintiffs and Respondents.

## OPINION

**RYLAARSDAM, Acting P. J.**—This appeal raises the question of whether an internal policy memorandum issued by defendant Department of Parks and Recreation (department) rises to the level of a regulation and thus cannot be revoked without satisfying the procedural requirements of the Administrative Procedure Act (APA; Gov. Code, § 11340 et seq.; all further statutory references are to this code unless otherwise stated). We conclude the memorandum is a regulation that has not satisfied the requirements of the APA and thus is not enforceable. The appeal of department and defendant Ruth Coleman, as director of department, from the writ of mandate issued in favor of plaintiffs Naturist Action Committee, Friends of San Onofre Beach, R. Allen Baylis, and Gerda Hayes is well taken. We reverse the order issuing a writ of mandate and remand to the superior court to enter a new order denying the petition.

## FACTS AND PROCEDURAL HISTORY

California Code of Regulations, title 14, section 4322 prohibits nudity in California state parks, stating in part: "No person shall appear nude while in any unit [of the State Parks System] except in authorized areas set aside for that purpose by the [d]epartment." This regulation is enforced by department. (Pub. Resources Code, § 5008, subd. (b).)

In 1979, the then director of department, Russell W. Cahill, promulgated an internal memorandum to division and office chiefs, district superintendents, and area managers, setting out guidelines for enforcement of California Code of Regulations, title 14, section 4322. It stated: "No clothing optional beaches will be designated within the California State Park System at this time. During the public meeting process, it became clear to me that the public is extremely polarized on this issue. It also became clear that there is a serious concern on the part of clothing optional beach opponents about the extra costs of patrolling beaches so designated. [¶] Proponents' arguments that a few miles of beach be set aside for their use were pervasive. However, serious opposition from legislators, county supervisors and local governing bodies lead me to believe that designating such areas will focus opponents' attention upon what seems to be a victimless crime at worst, and certainly an innocuous action. [¶] The cost of extra services argument is a good one. Therefore, it shall be the policy of the [d]epartment that enforcement of nude sunbathing regulations within the State Park System shall be made only upon the complaint of a private citizen. Citations or arrests shall be made only after attempts are made to elicit voluntary compliance with the regulations. This policy should free up enforcement people to concentrate on other pressing duties." These guidelines are commonly known as the "Cahill Policy."

Trail 6 beach in the San Onofre State Beach has been used by nude sunbathers for many years. The substantial population growth in north San Diego and Orange Counties has concomitantly increased the number of visitors to Trail 6 beach in the last several years. With that has come "a significant increase in the number of incidents involving public nudity, and complaints, citations, or arrests involving criminal conduct at [the beach], including complaints and citations or arrest for public nudity or lewd and lascivious conduct." Further, beginning in 2003 there have been several complaints made to the department from employees of "a sexually charged, harassing and hostile work environment" at the beach resulting from this conduct.

To address those problems, in May 2008 Coleman promulgated an internal memorandum to Orange Coast District staff members that rescinded the Cahill

Policy as to San Onofre State Beach, including Trail 6 beach. It provides: "The Trail 6 area of San Onofre State Beach located in north San Diego County[] has a long history of being a 'clothing optional' beach, and has been a destination locale for naturists for over three decades. In 1979 . . . William Cahill issued an opinion where nude sunbathing in remote areas of the State Park system would be tolerated up to a point where a State Park Peace Officer received a complaint from a member of the public. This policy has significantly insulated this behavior at San Onofre State Beach from legal prosecution, based on the previous opinion that the area was remote. In the ensuing years with significant population growth and the advent of the [I]nternet, the location has devolved to an area more prominently known for various lewd and lascivious conduct, and can no longer be considered 'remote', but rather the fifth most visited State Park that attracts families, children and individuals seeking opportunity to camp, surf, fish, walk and observe wildlife in a pristine coastal environment. [¶] Additionally, the explicit and illegal conduct of park visitors at the Trail 6 area of San Onofre State Beach creates a sexually charged, harassing and hostile work environment for [department] employees assigned to maintenance, revenue collection, public safety, resource protection, and interpretation duties in this park unit. [¶] Therefore, I am immediately rescinding the Cahill policy as it applies for San Onofre State Beach . . . ."

Thereafter, department initiated a program promulgating letters and flyers, posting signs, and issuing verbal warnings to notify the general public that the ban against nudity under California Code of Regulations, title 14, section 4322 would be strictly enforced at San Onofre State Beach beginning after Labor Day 2008 pursuant to a "cite and release" process used for infractions and misdemeanors.

Before enforcement began plaintiffs filed a petition for writ of mandate seeking to "[r]einstate[e] the 'Cahill Policy' pending [department's] compliance with the [APA]" by giving public notice of the terms of the new policy and allowing the public to attend a meeting where the modification of the Cahill Policy is discussed. In a declaration supporting issuance of the writ, Baylis stated he had relied on the nonenforcement of California Code of Regulations, title 14, section 4322 set out in the Cahill Policy.

The court granted the petition and issued a writ of mandate, holding it was a regulation, relying, in part, on *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557 [59 Cal.Rptr.2d 186, 927 P.2d 296] (*Tidewater*). As a result, it concluded, department must comply with the APA before it changes the Cahill Policy's terms. It ordered that department continue to follow the provisions of the Cahill Policy pending compliance with applicable procedures to change enforcement terms.

## DISCUSSION

Defendants dispute the court's finding the Cahill Policy was a regulation, claiming it does not satisfy the two-pronged test. We disagree but conclude it is not enforceable because it was not validly adopted in the first place.

■ The APA's definition of a regulation is broad; it includes "every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure." (§ 11342.600.) The seminal case on the meaning of a regulation is *Tidewater, supra,* 14 Cal.4th 557. It held there are "two principal identifying characteristics" of a "regulation subject to the APA . . . ." (*Id.* at p. 571.) "First, the agency must intend its rule to apply generally, rather than in a specific case. The rule need not, however, apply universally; a rule applies generally so long as it declares how a certain class of cases will be decided. [Citation.] Second, the rule must 'implement, interpret, or make specific the law enforced or administered by [the agency], or . . . govern [the agency's] procedure.' (. . . § 11342, subd. (g).)" (*Ibid.*)

The Cahill Policy satisfies both of these elements. The language of the memorandum itself states there will be no designation of "clothing optional beaches" in the entire state park system; it did not apply specifically to Trail 6, San Onofre State Beach, or any other specified beaches or parks. Further, it declares that department would enforce the prohibition against nude sunbathing "within the State Park System" only when specific complaints were made. Thus, it applied generally to all state parks.

As to the second prong, while the Cahill Policy might not interpret California Code of Regulations, title 14, section 4322, as defendants argue, it certainly implements it. The regulation prohibits nude sunbathing except to the extent department designates certain beaches or parks. The Cahill Policy explains that it will not make any such designation but that, in effect, it will not strictly enforce the statute either. Thus the Cahill Policy is a regulation as defined.

■ Satisfying that test alone, however, does not make the regulation enforceable. A regulation as defined under section 11342.600 and falling within the two-pronged *Tidewater* test is not valid if it does not adhere to APA requirements for adoption. Section 11340.5, subdivision (a) provides "[n]o state agency shall issue, utilize, enforce, or attempt to enforce any guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule, which is a regulation as defined in Section

11342.600, unless the guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule has been adopted as a regulation and filed with the Secretary of State pursuant to this chapter."

■ To comply, an agency "must give the public notice of its proposed regulatory action [§§ 11346.4, 11346.5]; issue a complete text of the proposed regulation with a statement of the reasons for it [§ 11346.2, subds. (a), (b)]; give interested parties an opportunity to comment on the proposed regulation [§ 11346.8]; respond in writing to public comments [§§ 11346.8, subd. (a), 11346.9]; and forward a file of all materials on which the agency relied in the regulatory process to the Office of Administrative Law [§ 11347.3, subd. (b)], which reviews the regulation for consistency with the law, clarity, and necessity [§§ 11349.1, 11349.3]." (*Tidewater, supra,* 14 Cal.4th at p. 568.) " 'Any regulation . . . that substantially fails to comply with these requirements may be judicially declared invalid. [Citation.]' [Citation.]" (*Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324, 333 [42 Cal.Rptr.3d 47, 132 P.2d 249].)

The Cahill Policy did not substantially comply. There is no evidence department sent notice of the regulation to the public (§§ 11346.4, 11346.5), provided an opportunity for public comment (§ 11346.8), or filed all underlying materials with the Office of Administrative Law, thus preventing its review of the regulation for fairness, clarity, and necessity (§§ 11347.3, subd. (b), 11349.1, 11349.3).

Plaintiffs argue department substantially complied and that was sufficient. It refers to "a long and detailed feasibility study" but acknowledges only a "small portion" is in the record. It also points out that local people and pertinent district offices provided input. But even assuming this satisfied the comment component of the APA requirements, which we do not decide, it did not fulfill the others, and failed to meet the objects of the statute.

■ If an agency adopts a regulation without complying with the APA requirements it is deemed an "underground regulation" (Cal. Code Regs., tit. 1, § 250) and is invalid. (*Modesto City Schools v. Education Audits Appeal Panel* (2004) 123 Cal.App.4th 1365, 1381 [20 Cal.Rptr.3d 831].) ■ Because the Cahill Policy is an underground regulation it cannot be enforced. Thus, the latest directive of the department rescinding the policy does not have to go through the APA rulemaking process. Its effect is merely to discontinue an invalid policy.

## DISPOSITION

The order is reversed. We remand to the superior court to enter a new order denying the petition for writ of mandate. Appellants are entitled to costs on appeal.

Aronson, J., and Ikola, J., concurred.

Respondents' petition for review by the Supreme Court was denied October 22, 2009, S174821.