Filed 4/30/25  Pacific Auto Recycling Center v. Cal. DTSC CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PACIFIC AUTO RECYCLING CENTER, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL et al., <br><br> Defendants and Appellants. | B334191 <br><br> (Los Angeles County Super. Ct. No. 21STCP03887) |

APPEAL from the judgment of the Superior Court of Los Angeles County, Curtis A. Kin, Judge.  Affirmed.

Rob Bonta, Attorney General, Dennis L. Beck, Jr., Acting Assistant Attorney General and Taylor Wetzel, Deputy Attorney General for Defendant and Appellant.

Sidley Austin, J. Simone Jones and David R. Carpenter for Plaintiff and Respondent.

In 1988, the predecessor to the Department of Toxic Substances Control (DTSC) issued Official Policy/Procedure Document Number 88-6 (OPP 88-6), which had the effect of excluding certain scrap metal recycling processes from the purview of the California's hazardous waste control law (HWCL) (Health & Saf. Code, § 25100 et seq.).  In 2021, DTSC rescinded OPP 88-6 concurrently with its determination that the previously excluded recycling processes are subject to its authority to enforce the HWCL.

Pacific Auto Recycling Center, Inc. (PARC), a scrap metal recycler, filed a complaint for declaratory relief and a petition for a writ of mandate compelling DTSC to reinstate OPP 88-6.  The court stayed the declaratory relief cause of action and, in ruling on the writ petition, found that OPP 88-6 was a regulation within the meaning of the Administrative Procedures Act (APA) that was not adopted in compliance with the APA.  (See Cal. Code Regs., tit. 1, § 250.)  The court, however, further found that DTSC had not complied with the APA in rescinding OPP 88-6.  It granted PARC's petition and ordered DTSC to reinstate OPP 88-6 pending compliance with the APA.

DTSC appealed.  For the reasons given below, we affirm.

**FACTUAL SUMMARY AND PROCEDURAL HISTORY**

### A.   *Background*

PARC is a business engaged in scrap metal recycling.  It purchases scrap metal feedstock, such as end-of-life automobiles and household appliances and, using a "hammer mill" machine, shreds the feedstock to produce "metal shredder aggregate."  The metal shredder aggregate may contain ferrous and nonferrous metals, plastics, rubber, glass, and other materials.  PARC uses a

variety of processes to separate recoverable metal and other materials from the metal shredder aggregate. PARC then sells the recoverable material to third parties. The nonrecoverable material that remains is "auto shredder waste" or "metal shredder residue." The metal shredder residue is chemically treated to reduce its toxicity and transported offsite for disposal.

DTSC is responsible for enforcing the HWCL. (Health & Saf. Code, §§ 25111, 25180, subd. (a)(1).) Under the HWCL, a "resource recovery facility" that treats "hazardous waste at the facility" is generally required to have "a hazardous waste facilities permit or other grant of authorization from [DTSC]." (*Id.*, § 25201, subd. (a).) "[S]crap metal," as defined in the HWCL regulations, is not subject to regulation. (Cal. Code Regs., tit. 22, §§ 66260.10 & 66261.6(a)(3)(B).)[1]

In 1988, DTSC's predecessor, the former Department of Health Services (DHS), issued OPP 88-6. OPP 88-6 stated that it is a policy and procedure "to ensure that a consistent regulatory approach [is] applied to the management and disposal of auto shredder waste." In OPP 88-6, DHS defined "in-line treatment" "as any treatment to a material in an industrial process before that material is exhausted or otherwise rendered a waste." DHS stated that in-line treatment "is exempt from DHS hazardous waste requirements" because it "is applied to a material that is not a waste." OPP 88-6 thus expressed the view, which DTSC

_____

[1] Although questions whether metal shredder aggregate is "waste" or "scrap metal" within the meaning of the HWCL are essential to both OPP 88-6 and DTSC's decision to rescind that policy document, these questions, as well as other issues concerning the interpretation of HWCL provisions and regulations, are beyond the scope of this appeal.

held until 2021, "that the metal shredder aggregate that was undergoing separation at the metal shredding facilities was not yet a waste" and "would not require a permit."

According to PARC, it and other scrap metal recyclers have relied on OPP 88-6 for more than 30 years in operating their recycling businesses.

In August 2021, DTSC issued an "evaluation and analysis of metal shredding facilities and metal shredder wastes" (the 2021 evaluation). (Capitalization omitted.) In the 2021 evaluation, DTSC rejected the view expressed in OPP 88-6 and determined that "unprocessed obsolete scrap metal arriving at the metal shredding facilities . . . is a waste." Consequently, "the point of generation of hazardous waste is at the shredder itself, meaning that various downstream activities performed at the facilities would be subject to the [HWCL]." Metal shredding facilities would thus be "required to apply for and receive a form of authorization from DTSC in order to operate."

Concurrently with the issuance of the 2021 evaluation, DTSC announced its "plans to rescind [OPP 88-6]," which it described as "a longstanding policy inconsistent with existing law."

In October 2021, the DTSC adopted emergency regulations "to clarify the [statutory] definition of scrap metal" and "to define the term 'metal shredder aggregate' " in existing regulations "and to exclude 'metal shredder aggregate' from the California definition of scrap metal."

On the same day the emergency regulations went into effect, DTSC formally rescinded OPP 88-6. In the notice of the rescission, DTSC stated that "OPP 88-6 is inexact, self-contradictory regarding the classification of auto shredder

waste, and in conflict with provisions in State and federal law." According to DTSC, OPP 88-6 "was intended to provide internal guidance to DHS/DTSC staff only. It did not replace or supersede any relevant statutes and regulations, nor was it ever adopted into law."

In 2022, the Superior Court of Sacramento County issued a preliminary injunction enjoining DTSC from enforcing the emergency regulation. The emergency regulation subsequently expired by operation of law and DTSC has not sought to establish the regulation through formal rulemaking procedure.

According to PARC, DTSC has recently initiated enforcement actions against it based on DTSC's "newfound interpretation that in-process scrap metal is a hazardous waste." PARC alleged that, if that interpretation stands, it may be required to comply with hazardous waste regulations that "will vastly increase current operating costs" and "threaten the economic viability of PARC's metal shredding facility."

### B.    *PARC's Petition*

In July 2022, PARC filed the operative amended verified petition for writ of mandate and complaint for declaratory relief against DTSC and its director. In its first cause of action for declaratory relief, PARC sought judicial declarations that: "[S]crap metal and metal shredder aggregate are not 'waste' and are not 'discarded,' and that metal shredder aggregate has not been demonstrated to be a 'hazardous waste' within the meaning of the HWCL and implementing regulations when recycled at [PARC's] facilities"; and "DTSC failed to comply with the APA in rescinding [OPP 88-6]," and the rescission "was an improper and void ultra vires act." (Italics omitted.)

In its second cause of action, PARC sought a writ of mandate "directing DTSC to reinstate [OPP 88-6]."

In a third cause of action, PARC alleged that in rescinding OPP 88-6, DTSC failed to conduct an environmental review required under the California Environmental Quality Act (CEQA).

In December 2022, the court overruled DTSC's demurrer to the second and third causes of action and stayed the cause of action for declaratory relief.

On June 15, 2023, the court heard argument and issued its ruling granting the petition for writ of mandate. The court found that OPP 88-6 "was a regulation" not adopted in compliance with the APA. It recognized that a regulation adopted without APA compliance is an invalid " 'underground regulation.' " The court concluded, however, that DTSC was required to comply with APA rulemaking requirements before rescinding OPP 88-6, and that OPP 88-6 "must be reinstated" pending compliance with the APA.

The court explained that OPP 88-6 was in effect for more than 30 years when DTSC rescinded the regulation. During that time, scrap metal recyclers "have complied with the policy . . . through 'significant levels of capital investment.' " The rescission of OPP 88-6, the court further explained, "would increase the costs of scrap metal recycling, thereby causing significant disruption to an issue of critical environmental importance to California." DTSC, however, failed to consider the industry's reliance on OPP 88-6 or "the impact of rescission to the industry, including the impact to operating costs and viability to scrap metal recyclers."

6

The court denied relief under PARC's third cause of action under CEQA.

In August 2023, the trial court granted PARC's request to dismiss without prejudice the cause of action for declaratory relief. The court thereafter entered judgment directing DTSC "to reinstate [OPP 88-6] unless and until DTSC rescinds [OPP 88-6] in compliance with the [APA]." This appealed followed.

## DISCUSSION

### A.  *Standard of Review*

A court may issue a writ of mandate when a public agency has abused its discretion in carrying out a discretionary function. (*CV Amalgamated LLC v. City of Chula Vista* (2022) 82 Cal.App.5th 265, 279.) " 'Although traditional mandamus will not lie to compel the exercise of discretion in a particular manner, it is a proper remedy to challenge agency discretionary action as an abuse of discretion.' " (*Ibid.*) In review of a judgment on a petition for a traditional writ of mandate, an appellate court " 'applies the substantial evidence test to the trial court's findings of fact and independently reviews the trial court's conclusions on questions of law.' " (*Id.* at p. 280.)

### B.  *Discussion*

"The APA establishes the procedures by which state agencies may adopt regulations." (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 568 (*Tidewater*).) A "regulation," for purposes of the APA, includes "every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it,

7

or to govern its procedure." (Gov. Code, § 11342.600.) No state agency shall enforce a regulation unless the regulation "has been adopted as a regulation and filed with the Secretary of State pursuant to this chapter." (*Id.*, § 11340.5, subd. (a).) A regulation or order of repeal that substantially fails to comply with the requirements of the APA may be judicially declared invalid. (*Id.*, § 11350, subd. (a); *Morning Star Co. v. State Bd. Of Equalization* (2006) 38 Cal.4th 324, 333 (*Morning Star*).)

Here, the court found that OPP 88-6 "was a regulation" for purposes of the APA and not adopted in compliance with the APA. Neither party challenges these findings on appeal. It follows from these findings and the foregoing authorities that OPP 88-6, was an "underground regulation" that "cannot be enforced." (*Naturist Action Com. v. Department of Parks & Recreation* (2009) 175 Cal.App.4th 1244, 1250 (*Naturist*); see *Tidewater*, *supra*, 14 Cal.4th at p. 576 [regulation adopted without compliance with APA is void].)

We need not decide whether DTSC's rescission of its underground regulation requires compliance with the APA. Regardless of whether DTSC's rescission of OPP 88-6 is valid (see *Naturist*, *supra*, 175 Cal.App.4th at p. 1250) or the rescission itself is an invalid repeal of a regulation (see Gov. Code, § 11350), OPP 88-6 is invalid and remains unenforceable. The invalidity of OPP 88-6 has opened a regulatory gap that, according to PARC, leaves metal shredder recyclers in "limbo."

In *Morning Star*, our Supreme Court faced a similar situation after determining that DTSC's interpretation and implementation of a statute concerning a hazardous waste fee "amount[ed] to a 'regulation' under the APA" (*Morning Star*, *supra*, 38 Cal.4th at p. 334) entitling the plaintiff "to relief

8

declaring the . . . regulation invalid" (*id.* at p. 328).
Notwithstanding the invalidity of the regulation, the court
directed the superior court to issue an order "maintaining
the fee system as presently interpreted and implemented by
[DTSC and the Board of Equalization]." (*Id.* at p. 341.) The
order would "remain in effect until such time as [DTSC] has
had a reasonable opportunity to promulgate valid regulations
under the APA." (*Ibid.*) The court explained that its remedy is
founded on "the court's inherent power to issue orders preserving
the status quo." (*Ibid.*) By allowing the invalid regulation to
remain in place pending adoption of APA-compliant regulations,
the court would "avoid significant disruption" of the hazardous
waste fee system. (*Ibid.*; see also *Savient Pharmaceuticals, Inc. v.
Department of Health Services* (2007) 146 Cal.App.4th 1457, 1471
[although agency's drug formulary did not comply with the APA,
the court, relying on "common sense," allowed the agency to
"implement the formulary pending APA compliance"].)

Here, the status quo is the regulatory structure established
in OPP 88-6 upon which DTSC, PARC, and other metal recyclers
have operated for more than 30 years. Maintaining that status
quo pending DTSC's adoption of valid regulations will, as in
*Morning Star*, "avoid significant disruption" to a 30-year
structure for applying the HWCL to the metal recycling industry.
(*Morning Star*, *supra*, 38 Cal.4th at p. 341.) We express no
opinion on how or whether the HWCL applies to the metal
recycling industry. Accordingly, we affirm the judgment of the
trial court.

9

## DISPOSITION

The judgment is affirmed.  Pacific Auto Recycling Center, Inc. is awarded its costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:



BENDIX, J.



KIM, J.

10